## RYAN vs. RYAN.

In a suit brought by a husband against his wife for divorce on the ground of habitual drunkenness for more than two years, the wife may recriminate, that he has been guilty of adultery. And such fact being found will prevent his getting a divorce.

## APPEAL from St. Louis Circuit Court.

NAPTON, J., delivered the opinion of the court.

This was a suit for a divorce commenced by Patrick Ryan, against his wife Mary Ann Ryan. The petitioner charges that his wife for more than two years had been guilty of habitual drunkenness, and also charges her with cruel and barbarous treatment, such as to endanger his life and the peace of his family.

In November, 1843, Mary Ann Ryan filed her answer and cross bill, admitting the marriage and denying the good conduct of the plaintiff. She charges him with having committed adultery with one Emily Montague, and with others not named. She charges him with inflicting on her a loathsome disease, from which she still suffered, and with having turned her out of his house, and refused her maintainance.

A jury was summoned to try the issues submitted to them, and found the following: 1. That the said Mary Ann has been addicted to

habitual drunkenness for the space of more than two years. 2. That the said Mary Ann has not been guilty of cruel and barbarous treatment towards said plaintiff, as charged in his bill. 3. That said Patrick has been guilty of adultery with Emily Montague, as charged in the answer.

The complainant applied for a new trial on the third issue which the court granted.

Meantime the court at the instance of the defendant, made an order allowing her a small sum for maintenance, *pendente lite.*

The result of the second trial was the same as the first, and a motion for a second new trial was overruled.

At the June term, 1845, the case came up for final hearing, and the court found that the said defendant had been addicted to habitual drunkenness for the space of more than two years, and further, that said defendant had not been guilty of cruel treatment, &c., as charged; and further found, that said complainant had been guilty of adultery with Emily Montague, and it appearing from these facts that said complainant is not entitled to the relief prayed, his bill is dismissed with costs.

On the hearing, the complainant asked the court to declare the law to be, that adultery cannot be recriminated as a bar to divorce, except when adultery is charged in the bill; that no offence can be recriminated except one of a similar kind to the one charged; and that the words "innocent and injured party," used in the statute, mean only that the party should be innocent of any offence which could be set up as a bar; consequently that this complainant was entitled to his divorce, notwithstanding the finding of the jury on the issue of adultery.

These instructions, if they may be so termed, contain the positions, we presume, upon which the appellant relies for the reversal of the decree of the circuit court.

The question is one of mere statutory construction; and the statute is a peculiar one. But little aid can be expected from adjudged cases.

In New York, divorces *a vinculo matrimonii*, are only granted for adultery, and there the right of the party sued, to recriminate, is conceded, but it must be an offence of the same character. Hence a condoned adultery cannot, as the courts of that State hold, be revived by cruelty or other offence, short of a repetition of the adultery. Johnson vs. Johnson, 4 Paige 460. Ib. 14 Wend. 644. In the English ecclesiastical courts, the *compensatio criminum* of the cannon law is adopted, and the party sued, is permitted to recriminate not only charges of the same nature, but others of a different character, and im-

plying a different degree of guilt. It is not, however, to be understood where charges of a different and lesser degree of guilt, such as cruelty and desertion were set up, in opposition to a suit for divorce on the ground of adultery, that such charges constituted *per se* a bar, in those courts. In Forster vs. Forster, (1 Hagg C. R. 144) the defence of the wife, from whom the husband was seeking a divorce, consists first, of a denial of her guilt; second, a recrimination of similar misconduct on his part; and third, unkind treatment of the husband. In relation to this last plea, Sir William Scott says: "A third plea of defence offered, but with less effect, is, that his treatment of his wife was, as it really appears to have been, marked with unkindness and disaffection. I say with less effect, because if the course of unkindness was such as the law would notice, the remedy is not that to which she has unhappily resorted, but an application to this court for the protection of a separation by reason of cruelty. And if the ill treatment is not of that gross kind, against which the law would not relieve in this form, still she is not to find her remedy in the contamination of her own mind and person, but in the purity of her own conduct, and in a dignified submission to an undeserved affliction. At the same time though such a plea has no absolute effect, it has a very proper relative effect, when infidelity on the part of the husband is likewise charged; because it adds greatly to the probability that such a charge is well founded, if it appear that his affections were visibly estranged from his wife, and therefore more likely to be diverted to other less worthy objects."

The case of Chambers vs. Chambers, (1 Hagg C. R. 439) further illustrates the light in which these minor recriminatory charges are viewed by the English ecclesiastical courts. In this case, the wife set up in bar of the divorce sought; 1, Connivance on the part of the husband; 2, Collusion; 3, Adultery committed by him; and 4, Cruelty. In relation to the last defence, Sir William Scott observes: "On this plea the question might arise, whether a party would be entitled to bar her husband from his remedy of divorce, for adultery proved against her by the plea of cruelty? I am inclined to think that she would not. It is certain that a wife has the right to say—"you shall not have a sentence against me for adultery, if you are guilty of the same offence yourself." The received doctrine of compensation would have that effect, because both parties are *in eoden delicto*; but this is not so in recrimination of cruelty; the *delictum* is not of the same kind. If the wife was the *prior petens* in a suit of cruelty, I do not know that she would be barred by a recrimination of that species; for the consideration would be very different; the court might not oblige

Ryan vs. Ryan.

her to cohabitation which would be dangerous.    Here the husband is the *prior petens* in a suit of adultery, and I take the general doctrine to be, that a wife cannot plead cruelty as a bar to divorce, for her violation of the marriage bed."

In Beeby vs. Beeby, 1 Hagg 789, and Astly vs. Astly, 1 Ib. 714, the same construction is given to the *compensatio criminis,* where it is set up as a plea in bar.    In the former case, the Judge observed, that such a plea was "a set-off of equal guilt on the part of her husband.    The doctrine that this, if proved, is a valid plea in bar, has its foundation in reason and propriety ; it would be hard if a man could complain of the breach of contract which he has violated ; if he could complain of an injury, when he is open to a charge of the same nature."

From these cases it may be inferred that the *compensatio criminis* of the canon law, as enforced in the ecclesiastical courts of England, is not a mathematical rule, which operates uniformly the same way, without regard to the circumstances and character of the original charge, or that of the one recriminated.

Adultery is conceded to be a plea in bar to a divorce, sought by the party who has been guilty of it, notwithstanding the opposite party has been guilty of the same offence.    But it is strongly intimated in the cases to which we have referred, that the offence set up by way of plea in bar, must be of a similar kind to the one charged.    It is true that where a condonation is pleaded as a bar to the divorce sought, the complaining party may show the commission of offences subsequent to the condonation of a character different from the one pardoned or condoned, for the purpose of reviving the original offence, so as to authorize the divorce.    And this doctrine, which is not the law in New York, appears to have led to the incorrect note in Kent's Commentaries, (vol. 1, page 101, *note a,*) which state states that the English ecclesiastical courts do not require the recriminatory charge *in bar* of the suit, to be of the like character.

Our statute is not like the New York law, where adultery is the only ground upon which a divorce *a vinculo matramonii* can be sought ; but its provisions bear more analogy to the principles by which the English ecclesiastical courts are governed, in granting divorces *a mensa et thoro.*    By our statutes, however, a divorce *a vinculo matramonii*, may be pracured for causes, which by the canon law, would not have authorized a divorce *a menso et thora ;* as for instance, desertion for two years, which in the ecclesiatical courts, so far from being a ground of divorce, was rather regarded as an objection to granting one, in cases where, but for this fact, the causes were amply sufficient.    These

Ryan vs. Ryan.

courts viewed a separation of this sort, either as voluntary, and therefore evidence of collusion; or if not voluntary on both sides, as a species of *laches* on the part of the injured party, in failing to bring the matter in proper time before that tribunal whose power and province it was to decree a restitution of marital rights, or to effect a legal separation, as the circumstances of the case might warrant. In addition to impotency, precontract and adultery, which according to every code of which we have any knowledge, are the principal, and in many, the only grounds for a divorce, either a *vinculo*, or a *mesna et thoro*. Our statute gives the same effect to a willful desertion for two years, a conviction of felony or other infamous crime, habitual drunkenness for two years, cruelty, and indignities to the person, which are intolerable. In all these cases, the "innocent and injured party," is declared entitled to a divorce, *a vinculo matrimonii*.

The question then arises, do the words "innocent and injured party" introduce or adopt, the *compensatio criminis* of the canon law, and if so, must the complaints be *in pari delicto*, as in the case of mutual adultery, or may any one of the enumerated offences be set off against any other charged, however different in character or degree?

So far as adultery is concerned, the question is easily answered, for the fourth section provides that where both parties have been guilty of adultery, no divorce shall be decreed. If then the husband, seeking a divorce on account of the adultery of the wife, is barred by the plea of adultery committed by him, he is surely equally barred, where his wife is only charged and convicted of a minor offence, one less derogatory to the obligation of the marriage contract, and which may have been induced by the neglect, misconduct, or cruelty of the husband. Had the wife been guilty of adultery, she could have pleaded the adultery of her husband in bar of a divorce. Shall she be denied this defence when her crime is less?

To apply this principle throughout, and allow a recrimination of offences dissimilar in their nature, and in their effects, in every instance, is a matter about which some hesitation might be felt, and which at all events we may pass over until a case arises which requires its decision. Would the husband, who seeks a divorce for the adultery of his wife, be barred by a recrimination of drunkenness or cruelty, or indignities to the person? Or would the wife who asks a divorce on account of cruel and barbarous treatment, be prevented from getting such divorce by reason of her adultery or drunkenness? It has been seen that in the ecclesiastical courts, the cruelty of the husband would not prevent his getting a divorce where his wife had been guilty of

adultery.   Nor is it clear that in those courts, a wife would be barred of her divorce for cruelty, by reason of her having been guilty of adultery.   Best vs. Best, 1 Adams 411, note —.   But whether these rules drawn from the cannon law, and acted on by the ecclesiastical tribunals of England, in whom the power of granting a divorce *a vinculo matrimonii* did not exist, ought to be appiled in the construction of our statute is worthy of grave consideration.

The judgment of the circuit court in this case will be affirmed.