# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

## OCTOBER TERM, 1858.

~~~~~~~~~~~~~~~~

10  249
f126  128
126  129

## CONANT v. CONANT.

The first clause of the fourth section of Article VI of the Constitution, which section provides that "the Supreme Court shall have appellate jurisdiction in all cases when the matter in dispute exceeds two hundred dollars; when the legality of any tax, toll, or impost, or municipal fine, is in question; and in all criminal cases amounting to felony, on questions of law alone," is construed to mean that the Supreme Court shall possess appellate jurisdiction in all cases; *provided,* that when the subject of litigation is capable of pecuniary computation, the matter in dispute must exceed in value or amount two hundred dollars, unless a question of the legality of a tax, toll, impost, or municipal fine is drawn in question.

The Supreme Court possesses appellate jurisdiction from a decree rendered in a suit for divorce from the bonds of matrimony.

Where in a suit for divorce brought by the wife, she charged in her complaint that adultery had been committed by her husband whilst she was living with him, "at the city of San Francisco, at divers times, with persons to the plaintiff unknown;" and adultery committed since she ceased to live with him, "at the said city of San Francisco, with divers other persons, whose names are to the plaintiff unknown:" *Held,* that the complaint was demurrable, but that the defendant, by failing to demur, waived the objection, so far as the want of specification of the acts constituting the charge is concerned. The statute has not altered any of the ordinary rules of pleading for cases of divorce, except that nothing can be taken by admission or default. The object of this exception is to prevent collusion between the parties; and when this is accomplished, the ordinary rules apply.

The charge of adultery should be stated with reasonable certainty as to time and place, so as to enable the defendant to prepare to meet it on the trial.

The doctrine of recrimination, or *compensatio criminum,* applicable in suits for divorce, and the several offences which, by the statute, constitute grounds of divorce, are pleadable in bar to such suits, the one to the other, within the principle of the doctrine.

To be an absolute bar, the conduct of the plaintiff must be such as to constitute a proper basis for judicial decree against her, had suit been instituted by the defendant.

Willful desertion of the other, by either party, for the period of two years, is ground for a divorce under the statute, and desertion for a less period is not sufficient to bar a decree.

Though desertion for a less period than two years is not sufficient, under the statute, to bar a decree where the adultery of the defendant is established, yet it furnishes a proper subject for consideration by the Court in determining the character of the divorce to be granted. The statute does not intend that a divorce from bed and board, or from the bonds of matrimony, may be granted indifferently according as the prayer of the applicant asks for one or the other modes of relief. A discretion should be exercised by the Courts according to the special circumstances of each suit, acting upon the settled principles of the common law as applicable to this class of cases.

The true rule which should govern the Courts in the exercise of their discretion in this respect is this, that to entitle to a decree for an absolute divorce from the bonds of matrimony, the applicant must be an innocent party—one who has faithfully discharged the obligations of the marriage relation, and seeks relief because really aggrieved or injured by the misconduct of the other; and, on the other hand, where there are circumstances showing a disregard of those obligations, though not carried to such a degree as to constitute itself a ground for divorce, the decree should be only for a divorce from bed and board. To obtain a release *a vinculo matrimonii*, the applicant must be without reproach, and however guilty the defendant, if the applicant is chargeable either with similar guilt, or an offence to which the law attaches similar consequences, the relief must be denied; and if the applicant, though not thus guilty, is still not blameless, the relief must be limited to a divorce *a mensa et thoro*.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was a suit for divorce from the bonds of matrimony, brought by the wife against her husband.

The complaint alleges that the plaintiff was married to the defendant on the twenty-fourth of May, 1854, at San Francisco, and as grounds of divorce, charges:

1. That after the marriage of the parties, the defendant became, and has been for the space of two years last past, and still is, habitually intemperate, idle, and profligate;

2. That the defendant has willfully neglected to provide the plaintiff the common necessaries of life for the period of three years next before the commencement of this suit, he having the ability to provide the same;

3. That the defendant, since their marriage, has treated the plaintiff with extreme cruelty, by frequently drawing a pistol on her, and threatening to shoot and kill her, and by falsely and maliciously slandering and injuring her reputation by declaring that he never was married to her, and that she was not his wife, and that she only lived with him as his mistress;

4. That during the time she lived and cohabited with the defendant, as she is informed and believes, the said defendant, disregarding the solemnity of his marriage vows, committed adultery at the city of San Francisco, at divers times, with persons whose names are to plaintiff unknown; that about the ninth of July, A. D. 1856, the said plaintiff and defendant ceased to live and cohabit together as husband and wife, and have not so lived or

cohabited since that time; and that since the time last mentioned the said defendant, as the plaintiff is informed and verily believes, committed adultery, at the said city of San Francisco, with divers other persons whose names are to the plaintiff unknown, and that all said acts of adultery were committed by the defendant without the consent, connivance, privity, or procurement of the plaintiff, and without any collusion by or between the plaintiff and defendant, and that plaintiff has not voluntarily cohabited with the said defendant since the commission of said acts of adultery by him, and with knowledge thereof.

The answer of the defendant denies the several charges of the plaintiff, and then avers that said plaintiff lived with him, apparently happy and contented, from the time of their marriage aforesaid, until about the month of July, A. D. 1856, when, without cause or provocation from the defendant, and contrary to his wishes and express desire, she left his bed and board and the comforts of the house and·home he had provided for her, and which was supplied and furnished with the necessaries and comforts of life for her convenience and enjoyment fully equal to his (defendant's) means and ability, forsaking him and utterly refusing to live with him, or to perform any of the duties of a good and virtuous, or true and lawful wife, and has ever since her said departure refused to return and conduct herself as the wife of said defendant, although he has always been, and still is, willing to receive and treat her affectionately.

The case was referred to a referee, before whom evidence was introduced, against the objection of the defendant, proving adultery in one instance, committed by him in August, 1857. The ground of the objection was that no specific acts of adultery could be proved under the vague and general allegations of the complaint. No attempt was made or evidence introduced to establish any other of the charges made against the defendant. It also appeared in evidence that the plaintiff left the residence of her husband on the ninth of July, 1856, and had ever since lived apart from him. No evidence was introduced to explain her conduct in leaving her husband.

This suit was commenced on the twenty-ninth day of September, 1857.

The plaintiff obtained a decree dissolving the marriage between the parties, and the defendant appealed.

*S. Heydenfeldt* for Appellant.

1. The allegations in the complaint as to the charge of adultery against the defendant, are too vague and uncertain to authorize evidence of any specific act of adultery. Richards *v.* Richards, Wright's Ohio, 302; Bird *v.* Bird, Ib., 98; Adams *v.* Adams, 16 Pick., 256; Wright *v.* Wright, 3 Texas, 168; Byrne *v.* Byrne, 3 Texas, 336.

2. The wife having deserted her husband, his adultery does not entitle her to a divorce. Foy *v.* Foy, 13 Iredell, 90; Moss *v.* Moss, 2 Ib., 55; Wood *v.* Wood, 5 Ib., 674; Whittington *v.* Whittington, 2 Dev. & Bat., 64.

*J. W. Winans* being retained as counsel in a case involving the same questions which are raised on this appeal, asked and obtained permission to file a brief on the part of the respondent.

1. Separation or desertion can not be pleaded by way of recrimination as a bar to a suit for a divorce. Bishop on Marriage and Divorce, § 397, and notes 1, 2, 3; Beely *v.* Beely, 4 English Eccl. Rep., 358, note *a;* Forster *v.* Forster, 1 Haggard's Cons. Rep.; 4 Eccl. Rep., 364.

2. Malicious desertion will not justify adultery in the wife. Eldred *v.* Eldred, 2 Curtis, 376; 7 Eng. Eccl. Rep., 146; Morgan *v.* Morgan, 7 Eng. Eccl. Rep., 260; 2 Kent's Com., 100, and note *a;* Peckford *v.* Peckford, 1 Paige, 274; Richardson *v.* Richardson, 4 Porter, 467 and 478. In which case, the husband sought to plead the wife's desertion in bar. Sullivan *v.* Sullivan, 2 Eccl. Rep., 314.

3. In contravention of these authorities, four cases are cited from the North Carolina Reports, of which I will briefly say: *first,* that they declare a doctrine differing *toto cœlo* from that of any of the Courts of either England or the United States; *second,* that they take their character and tone from certain special statutes of North Carolina respecting divorces; *third,* that they appear to lean to the conclusion, that where a divorce is denied to the wife for adultery of the husband on account of her separation, it must be shown that she positively refuses to live with him; *fourth,* that the statutes of North Carolina draw a distinction between divorces *a mensa,* and divorces *a vinculo,* allowing the former in adultery cases where the latter is denied; while our statute allows a divorce in either form, without distinction, at the option of the applicant. Act of March 25, 1851, § 4, Wood's Digest, 491.

[A preliminary objection was also taken to the hearing of the appeal, that the Supreme Court has no appellate jurisdiction, under the Constitution, in a case of divorce, where no question of property is involved. In the present case, there is no allegation in the complaint that there is any common property which can be the subject of division on the dissolution of the marriage. Act of Husband and Wife, § 12, Wood's Digest, 488.]

FIELD, J., delivered the opinion of the Court—BALDWIN, J., concurring.

The plaintiff charges in her complaint, as grounds of divorce, the habitual intemperance of the defendant; his neglect to pro-

vide for her the common necessaries of life, for the period of three years next preceding the commencement of this suit, having the ability to provide the same ; extreme cruelty on his part ; and adultery committed whilst she was living with him, " at the city of San Francisco, at divers times, with persons to the plaintiff unknown ; " and adultery committed since she ceased to live with him, " at the said city of San Francisco, with divers other persons, whose names are to the plaintiff unknown." No attempt was made to substantiate any of these charges, except that of adultery in one instance, committed after the plaintiff had ceased to live with her husband ; and objection was taken to any evidence on this head, under the pleadings.  It appeared in proof that the plaintiff had deserted the residence of her husband more than a year previous to the act of adultery ; and this fact, and the defective allegation in the pleadings, constituted the principal grounds upon which the defendant relied to defeat the plaintiff's application.  A decree dissolving the marriage was rendered, and the defendant appealed.

A preliminary objection is taken to the hearing of the appeal that this Court possesses no appellate jurisdiction, in a case of divorce, when a question of property is not involved in its determination.  The fourth section of article sixth of the Constitution provides that " the Supreme Court shall have appellate jurisdiction in all cases when the matter in dispute exceeds two hundred dollars ; when the legality of any tax, toll, or impost, or municipal fine is in question ; and in all criminal cases amounting to felony, on questions of law alone."  We do not understand the last words of the first clause of this section as restricting the jurisdiction only to those cases which involve questions of property, or the legality of a tax, toll, impost, or municipal fine. As we read the section, the Court possesses appellate jurisdiction in all cases ; provided, that when the subject of litigation is capable of pecuniary computation, the matter in dispute must exceed in value or amount two hundred dollars, unless a question of the legality of a tax, toll, impost, or municipal fine is drawn in question.  Similar language, as to the amount, is used in defining the original jurisdiction of the District Courts.  The sixth section of the same article declares that " the District Courts shall have original jurisdiction, in law and equity, in all civil cases, when the amount in dispute exceeds two hundred dollars, exclusive of interest."

It could never have been the intention of the framers of the Constitution to deny to the higher Courts, both original and appellate, any jurisdiction in that large class of cases where the relief sought is not susceptible of pecuniary estimation—such as suits to prevent threatened injury—respecting the guardianship of children—honorary offices, to which no salary is attached, and the like.  And yet, to this result, the position of the respondent

directly leads. We think the construction contended for too narrow, and not imperatively required by the language of the Constitution.

The allegations of the complaint, as to the adultery, are vague and uncertain; and the complaint might have been demurred to successfully on this ground. The charge should have been stated with reasonable certainty as to time and place, so as to have enabled the defendant to prepare to meet it on the trial.

In Heyde v. Heyde, (4 Sand., 693,) the charge in the complaint was, that " the defendant, since the marriage, viz., in the month of November, 1851, committed adultery with a female, in the city of New York, whose name is unknown to the plaintiff, and the particular circumstances whereof are unknown to the plaintiff, but which she expects to be able to prove at the trial of this cause."

" The Judge said it would be dangerous to proceed on such an indefinite allegation. If the party have information sufficient to warrant the belief that the offence has been committed, or the expectation that it can be proved on the trial, that information must extend at least to the particular place or locality where it occurred, though the name of the person with whom may be unknown." (Codd v. Codd, 2 John. Ch., 224; Wood v. Wood, 2 Paige, 113; Wright's Ohio, 98; Richards v. Richards, Ib., 302; Stokes v. Stokes, 1 Mo., 322; Wright v. Wright, 3 Texas, 168.)

The defendant, by failing to demur, waived the objection, so far as the want of specification of the acts constituting the charge is concerned. The statute has not altered any of the ordinary rules of pleading for cases of divorce, except that nothing can be taken by admission or default. The object of this exception is to prevent collusion between the parties; and when this is accomplished, the ordinary rules apply.

It appears in proof that the plaintiff left the residence of her husband more than a year previous to the act of adultery on the part of the defendant, and has ever since lived apart from him. No cause is assigned or explanation attempted for her conduct; and the legal inference follows that she was guilty of nothing less than willful desertion; and this is urged as a bar to the application of the plaintiff, not on the ground that it justified the adultery of the defendant, but that it deprived her of all right to a cancellation of the marriage contract, whose obligations she had herself diregarded.

It is a general principle of the common law that whoever seeks redress for the violation of a contract resting upon mutual and dependent covenants, to obtain success, must himself have performed the obligations on his part. Something analogous to this principle is found in the doctrine of recrimination or *compensatio criminum,* which was originally borrowed from the canon law, by which the defendant is permitted to contest the plain-

tiff's application on the ground of his own violation of the marriage contract—to set off, to use the language of the cases, the equal guilt of the plaintiff. "The doctrine," observes Lord Stowell, "that this, if proved, is a valid plea in bar, has its foundation in reason and propriety; it would be hard if a man could complain of the breach of a contract which he has violated; if he could complain of an injury when he is open to the charge of the same nature. It is not unfit, if he who is the guardian of the purity of his own house has converted it into a brothel, that he should not be allowed to complain of the pollution which he himself has introduced; if he, who has first violated his marriage vow, should be barred of his remedy, the parties may live together, and find sources of mutual forgiveness in the humiliation of mutual guilt." (Beeby v. Beeby, 1 Hagg., 790.)

In England, until a recent period, divorces from the bonds of matrimony were never granted but by act of Parliament. Divorces from bed and board were decreed by the Ecclesiastical Courts, and then only for adultery or cruelty; and it is the settled doctrine of those Courts that proof of adultery of the plaintiff will bar a suit on the ground of the adultery of the defendant, but that cruelty furnishes no bar to such suit. (Proctor v. Proctor, 2 Hagg. C. R., 292; Dillon v. Dillon, 3 Curt., 86.)

The ground upon which the distinction between recrimination by reason of the adultery, and recrimination by reason of the cruelty of the plaintiff, is placed, is, that the offences are not of the same kind. Thus, in Chambers v. Chambers, (1 Hagg. C. R., 439,) where the defendant pleaded in bar to the suit, among other grounds, the cruelty of the plaintiff, Lord Stowell said: "It is certain that the wife has a right to say, 'You shall not have a sentence against me for adultery, if you are guilty of the same offence yourself.' The received doctrine of compensation would have that effect, because both parties are in *eodem delicto*; but this is not so in recrimination of cruelty. The *delictum* is not of the same kind. If the wife was the *prior petens* in a suit of cruelty, I do not know that she would be barred by a recrimination of that species, for the consideration would be very different. The Court might not oblige her to cohabitation, which would be dangerous. Here the husband is the *prior petens* in a suit of adultery, and I take the general doctrine to be that a wife can not plead cruelty as a bar to divorce for her violation of the marriage-bed."

The soundness of the distinction thus taken by Lord Stowell was doubted in Dillon v. Dillon, (3 Curt., 86,) when Dr. Lushington said, in referring to that decision: "I candidly say I entertain doubts whether the reason given is the most satisfactory that could be adduced, because, if this effect arises out of the difference in the nature of the two offences, it follows, *é converso*, that when the wife has brought a suit on account of cruelty, the

husband can not plead her adultery in bar, a proposition which
I am not aware has ever been laid down in these Courts."

Although the distinction alluded to was asserted and main-
tained in the Ecclesiastical Courts, which possessed only author-
ity to decree a divorce *a mensa et thoro*, it was the settled course
of Parliament, in determining on the propriety of granting a
petition of divorce *a vinculo matrimonii*, to allow both adultery
and cruelty to be pleaded in recrimination as an absolute bar;
and in the matter of Simmons' Divorce Bill, (12 C. and F., 339,)
where the husband had separated from his wife for many years
without making any provision for her maintenance from his
means, which were sufficient, it was held by the House of Lords
that he was not entitled to a divorce, though the adultery of the
wife was clearly proved.   Lord Brougham, in moving the post-
ponement of the bill, observed, " that he wished it to be clearly
understood that he did so, not on the ground of the husband's
adultery, but wholly independent of that charge, and as if there
was no ground whatsoever for it; on the evidence that this per-
son neglected his wife, and threw her on the world without car-
ing what became of her, or how she was supported, or allowing her
anything towards her support," and Lord Campbell, in express-
ing a concurrence in the views taken by Lord Brougham, said,
" that he thought this person's conduct in neglecting his wife,
while he was carrying on a large business, and paying servants
large wages, did disentitle him to the relief he asked of their
lordships."

In this State, the statute has specified certain acts or conduct
which shall constitute grounds of divorce, and so far as the
matrimonial contract is concerned, the Courts can not distinguish
between them, whatever difference there may be in a moral
point of view.   The several offences must, therefore, be held
equally pleadable in bar to the suit for divorce—the one to the
other, within the principle of the doctrine of recrimination.

Aside from this consideration, it would seem to be correct in
principle, that where the matter pleaded is such as would entitle
the defendant to a decree, had it been presented in a bill brought
by himself, the relief should be denied.   Certain consequences
are attached to the decree, independent of the dissolution of the
marriage contract, and they are generally more favorable to the
party obtaining the relief than to the contestant; but a decree
can not be granted in favor of one, and afterwards in favor of
the other, as the first would dissolve the marriage, and then no
marriage would subsist, upon which the second decree could act;
and a decree granting a divorce in favor of each, would be an
anomalous proceeding.   (Bishop on Div., 401; Degarnet *v*. Degar-
net, 5 Dana, 499.)

In Missouri, the statute authorizes a divorce from the bonds
of matrimony, like the statute of this State, on several grounds,

and in Nagel v. Nagel, (12 Mo., 53,) it was held that when both
parties are found guilty of any of the enumerated offences for
which a divorce may be granted, the bill should be dismissed.
In that case, the evidence sustained the charge of adultery, on
the part of the defendant, and the charge of cruel and inhuman
treatment on the part of the plaintiff. (Ryan v. Ryan, 9 Mo.,
539.)

The cases in which the doctrine of recrimination has been gen-
erally applied, have been those in which the adultery of the
plaintiff was established, (Mattox v. Mattox, 2 Ham., 234,) but
as our statute attaches to other offences the same consequences
as to adultery, there is reason and propriety in extending to
them the same principle. It is eminently fit that he who seeks
a divorce, should himself be guiltless of conduct which would
entitle the other party to similar relief.

The only difficulty in the position of the appellant, arises from
the period to which the desertion of the plaintiff extended. Had
it existed for two years, the time provided by statute to consti-
tute a ground of divorce, we should have no doubt that the bill
should have been dismissed. But to be an absolute bar, the con-
duct of the plaintiff must be such as to constitute a proper basis
for judicial decree against her, had suit been instituted by the
defendant. This is not the present case, and we can not fix a
period other than that designated by the statute.

The desertion of the plaintiff was without excuse, and her
conduct is by no means relieved by the imputations of cruelty,
neglect, and habitual intemperance, cast upon the defendant in
her complaint, none of which has she attempted to establish, and
which we must therefore presume to have been wantonly made.
Still it is not sufficient, under the statute, to bar a decree, the adul-
tery of the defendant being established, but it furnishes a proper
subject for consideration by the Court in determining the charac-
ter of the divorce to which she is entitled. The statute says di-
vorces may be granted from bed and board, or from the bonds
of matrimony, but it was never intended that either should be
indifferently granted according as the prayer of the applicant
asked for one or the other modes of relief. It was intended that
a certain discretion should be exercised by the Courts, according
to the special circumstances of each suit, acting upon the settled
principles of the common law as applicable to this class of cases.
And the true rule which should govern the Courts in the exer-
cise of its discretion in this respect is this, that to entitle to a
decree for an absolute divorce from the bonds of matrimony, the
applicant must be an innocent party—one who has faithfully dis-
charged the obligations of the marriage relation, and seeks relief
because really aggrieved or injured by the misconduct of the
other; and, on the other hand, where there are circumstances
showing a disregard of those obligations, though not carried to

17

such a degree as to constitute itself a ground for divorce, the decree should be only for a divorce from bed and board. To obtain a release *a vinculo matrimonii*, the applicant must be without reproach, and however guilty the defendant, if the applicant is chargeable either with similar guilt, or an offence to which the law attaches similar consequences, the relief must be denied; and if the applicant, though not thus guilty, is still not blameless, the relief must be limited to a divorce *a mensa et thoro.*

It follows, from the views we have taken, that the decree of the District Court, dissolving the marriage between the parties, must be reversed, and the Court directed to enter a decree granting a divorce to the parties only from bed and board.

Ordered accordingly.