[Civil No. 279.   Filed January 30, 1892.]

[29 Pac. 649.]

THE HISTORY COMPANY, a Corporation, Plaintiff and Appellant, v. J. W. DOUGHERTY, Defendant and Appellee.

1. APPEAL AND ERROR—JURISDICTION—STATUTORY CONSTRUCTION—FINAL JUDGMENTS—AMOUNT IN CONTROVERSY—REV. STATS. U. S., 1878, SEC. 1869, CONSTRUED, SEC. 1874 CONSTRUED, SEC. 1910 CITED, SEC. 1865 CITED, TITLE 23 CITED; SUPP. REV. STATS. U. S. 1891, P. 893, SEC. 5, CH. 131, CITED; REV. STATS. ARIZ. 1887, PARS. 592, 593, 846 CONSTRUED; PARS. 3275, 3276, 3280 CITED; COMP. LAWS ARIZ. 1877, SECS. 2339, 2340, CITED—BISHOP V. PERRIN, ANTE, P. 350, 29 PAC. 648, CITED AND APPROVED.—Section 1869, Rev. Stats. U. S., providing that "writs of error, bills of exceptions, and appeals shall be allowed from the final decisions of the district courts to the supreme courts of all the territories, respectively, under such regulations as may be provided by law," refers only to "district courts" created by the organic act, which are those vested with the same jurisdiction in certain cases as the circuit and district courts of the United States. It does not refer to territorial district courts established under sec. 1874, Rev. Stats. U. S., which have their existence by virtue of the acts of the territorial legislature. Their jurisdiction and the right and the manner of appeal from their judgments are defined solely by the legislature. Paragraphs 846, 592, and 593, Rev. Stats. Ariz. 1887, sections of the same code defining jurisdiction on appeals are irreconcilable. Where a commission for the revision of a code has been appointed by the legislature the entire code pertaining to a particular subject will be construed as adopted and approved the same day though in fact

approved at different times. In such revision where paragraph 846 gives the right of appeal in all cases, and paragraph 592 limits the right, the construction will be in favor of the enlarged rather than the limited right, and, therefore, an appeal from the final judgment of the district court in all cases will be allowed. Upon such appeal the matters to be reviewed are to be governed by paragraph 593.

2. FRAUD—REPRESENTATIONS AS TO EXISTING INTENT TO DO ACTS IN FUTURE.—Fraud cannot be predicated upon a representation of an existing intent thereafter to do or not to do a particular thing.

3. SAME—PLEADING—CONCLUSIONS OF LAW.—An answer to a complaint alleging a written contract for the purchase of certain books, setting up that the defendant made an oral agreement with plaintiff's agent, and that immediately thereupon, the agent fraudulently substituted a written memorandum expressing an entirely different contract, is subject to demurrer. The application of the epithet "fraudulent" to the transaction is not a sufficient allegation of fraud. Facts showing fraud must be alleged.

4. CONTRACTS—DUTY TO READ—SIGNATURE BINDING IN ABSENCE OF FRAUD.—A person of ordinary intelligence is bound to know the contents and nature of an instrument he signs, unless imposed upon by some fraudulent device in the securing of his signature.

5. EVIDENCE—RELEVANCY.—In an action upon a written contract, ordering thirty-nine books, evidence that at the time of the order the agent was only soliciting subscriptions for the entire thirty-nine volumes was irrelevant.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yavapai. James W. Wright, Judge. Reversed.

The facts are stated in the opinion.

Ross & Van Horn, for Appellant.

A mere allegation of fraud is insufficient. Facts constituting fraud must be specifically alleged and proved.

That the agent "forthwith did substitute" the writing sued on for the oral contract, means nothing more than that he asked the defendant to witness by his signature the contract just made. His signature was to a writing "which serves as a proof of the obligation." It is not a substitution for the contract, but is the evidence of the contract.

Actual fraud in securing defendant's signature would avoid

the contract.  But while the defense charges "fraud," "intent to circumvent," and the like, no allegation is made of facts sufficient to maintain fraud.  *Tepoel* v. *Bank,* 24 Neb. 815, 40 N. W. 415; *Hazard* v. *Griswold,* 21 Fed. 178.

Granting that the oral contract was for one book only, that the agent "did forthwith present" to defendant "for his signature a certain other and different contract," was not fraudulent unless, the defendant being unable to read, the contract was misread to him, or its contents misrepresented to him by some one in whom he had the right to repose confidence.  This he fails to allege, or even to allege that the agent made any misrepresentation, or did anything by word, act, or silence to induce him to believe it was a contract for one book only, or to indicate its contents, or to prevent his reading it.  Nor does he say that he had no opportunity to read the contract, or that any device, artifice, or trick was resorted to to prevent his reading it.  Nor does he claim to have relied on word or act on the part of the agent as to the contents of the contract, but solely and simply upon his impression. Neither does he make showing of any fiduciary relation, or of right to repose confidence in the agent as *his* agent, friend, or principal.  Neither does he allege that the enforcement of the contract will work him any injury.  The authorities are that a person is bound to know the contents of a contract or instrument he signs, unless he can bring himself within one of the exceptions just noticed.  *Penny* v. *Jackson,* 85 Ala. 67, 4 South. 720; *Barnes* v. *Mahannah,* 39 Kan. 87, 17 Pac. 319; *Metropolitan etc. Co.* v. *Esche,* 75 Cal. 513, 17 Pac. 675; *McKinney* v. *Herrick,* 66 Iowa, 414, 23 N. W. 767; *Wallace* v. *Chicago etc. Ry. Co.,* 67 Iowa, 547, 25 N. W. 772; *Taylor* v. *Fleckenstein,* 30 Fed. 99; *Bell* v. *Ryerson,* 11 Iowa, 233, 77 Am. Dec. 142; *Ward* v. *Packard,* 18 Cal. 392; *Morrison* v. *Lods,* 39 Cal. 381; *McEwan* v. *Ortman,* 34 Mich. 325; *Murrell* v. *Murrell,* 2 Strob. Eq. 148, 49 Am. Dec. 664; *Hawkins* v. *Hawkins,* 50 Cal. 558; Parsons on Contracts, 773; Bigelow on Fraud, 525; Story's Equity Jurisprudence, 191; Kerr on Fraud and Misrepresentation, 84.

For cases *totidem pedibus* with the case at bar, see, *Hazard* v. *Griswold,* 21 Fed. 178, and *McCormick* v. *Molburg,* 43 Iowa, 561.

The burden of proof is on the defendant to establish the facts constituting fraud. *Wallace* v. *Mattice,* 118 Ind. 59, 20 N. E. 497; *Towsy* v. *Shook,* 3 Blackf. 267, 25 Am. Dec., 108; *Nichols* v. *Patten,* 18 Me. 231, 36 Am. Dec. 713; *Bartlett* v. *Blake,* 37 Me. 124, 58 Am. Dec. 775; *Bunch* v. *Smith,* 15 Tex. 219, 65 Am. Dec. 159; *Martin* v. *Foster,* 83 Ala. 213, 3 South. 422; *Moses* v. *Katzenberger,* 84 Ala. 95, 4 South. 237.

And as against the contract and the supporting evidence of the agent there must be more than defendant's evidence alone. *Jones* v. *Degge,* 84 Va. 685, 5 S. E. 799.

And where the matter is in doubt the presumption raised by the contract must prevail in its favor. *Martin* v. *Foster,* 83 Ala. 213, 3 South. 422.

The written contract supported by the testimony of the agent is conclusive unless contradicted by two witnesses or their equivalent. *Sylvius* v. *Kosek,* 117 Pa. St. 67, 2 Am. St. Rep. 645, 11 Atl. 392.

The usual rule that a verdict will not be set aside unless clearly wrong does not apply here strictly; for in this case the law has settled well and thoroughly what shall be considered sufficient proof. *Jones* v. *Degge,* *Martin* v. *Foster,* *Sylvius* v. *Kosek, supra.*

Baldwin & Johnston, for Appellee.

The jury are the sole and exclusive judges of the evidence, the weight of evidence and the credibility of the witnesses, and, where the evidence is conflicting, their solution of the problem of truth or falsity, is, within that sphere, conclusive. *Stampofsi* v. *Steffens,* 79 Ill. 303.

The cases cited by the appellant express the doctrine that where the makers of a written contract agree that the *writing itself* shall express the contract between the makers, then the makers, being thus put upon guard, are bound by the terms of the writing, in the absence of fraud. Where it is mutually agreed and understood that the *writing itself* shall express the concurrent minds and wishes of the contractors, the attention of the signers of the written contract is directed specially to and fixed upon the contents of the writing, and they look to and *read* the *written* contract for the purpose of seeing that it correctly expresses their intentions. The rule is radi-

cally different in all those cases where the minds of the contractors meet and agree through the agency of *spoken* language, and thereupon one of the parties purports to reduce the *verbal* contract to *writing,* but fraudulently misrepresents *in* writing the verbal agreement. In the latter instance one of the contractors may, without negligence, repose confidence in the honesty of the other who writes the contract. *Briggs* v. *Missouri,* 51 Mo. 249, 11 Am. Rep. 245, and note; *Albany City Savings Institution* v. *Burdick,* 87 N. Y. 44; *Cole Brothers* v. *Williams,* 12 Neb. 440; *Griffiths* v. *Kellogg,* 39 Wis. 290, 20 Am. Rep. 48; *Whittaker* v. *Miller,* 83 Ill. 383; *Barlow* v. *Scott,* 24 N. Y. 42; *Puffer* v. *Smith,* 57 Ill. 527; *Trambley* v. *Record,* 130 Mass. 259; *Taylor* v. *Atchison,* 54 Ill. 199, 5 Am. Rep. 118; *Watt* v. *Powers,* 20 Mich. 429, 7 Am. Rep. 661, and note; *Gibbs* v. *Linbury,* 22 Mich. 488, 7 Am. Rep. 675.

KIBBEY, J.—This was a suit in the court below upon an alleged contract of purchase by the appellee from the appellant of a complete set of the literary works of Hubert Howe Bancroft, then in the course of publication by appellant. The price alleged to have been agreed upon, and which was sued for in this suit, was $170.50. There was judgment for the appellee in the court below.

It is objected to our consideration of this appeal that this court has not jurisdiction, because the judgment appealed from is not one from which an appeal is allowed, in that the "matter in dispute" does not exceed two hundred dollars. The several statutory provisions bearing upon the question of appeals to this court are as follows: Section 1869 of the Revised Statutes of the United States, (of our organic act) is: "Writs of error, bills of exceptions, and appeals shall be allowed from the final decisions of the district courts to the supreme court of all the territories, respectively, under such regulations as may be prescribed by law." Section 592, Revised Statutes of Arizona, 1887, is: "The supreme court shall have appellate jurisdiction in all cases where the matter in dispute exceeds one hundred dollars, where the legality of any tax, toll, or impost, or municipal fine is in question, and in all criminal cases amounting to felony, or on questions of law alone." Section 593 provides that "the supreme court shall have juris-

diction to review upon appeal, or other proceedings provided by law, (1) a judgment in an action or proceeding commenced in the district courts, when the matter in dispute exceeds two hundred dollars, or when the possession of tenements or land is in controversy, or brought into that court from another court, and to review upon appeal from such judgment, any intermediate order involving the merits, and necessarily affecting the judgment; (2) an order granting or refusing a new trial, sustaining or overruling a demurrer, or affecting a substantial right in an action or proceeding." The foregoing sections (592 and 593) are parts of title 14, approved March 10, 1887. Section 846, Revised Statutes of Arizona, 1887, is: "An appeal or writ of error may be taken to the supreme court from any final judgment of the district court rendered in civil cases." Section 846 is a part of title 15, but was approved February 14, 1887. A comparison of these several statutory provisions discloses an irreconcilable conflict. Section 1869 of our organic act, we think, refers only to "district courts" which are mentioned in and created by that act itself, and not to courts established under the provisions of section 1874 of the organic act, as are our several district courts in, of, and for the several counties. The "district courts" created by the organic act are those vested with the same jurisdiction in certain cases as is vested in the circuit and district courts of the United States, (see sec. 1910, organic act,) and which under the provisions of section 1865 of the Revised Statutes of the United States, and of the act of Congress of 1891, (sec. 5, ch. 131, Supp. Rev. Stats. U. S., p. 893,) hold two terms annually at such places within such district as may be designated by the chief justice and his associates. This appeal is from the district court of the third judicial district in and for the county of Yavapai. No such court is created by our organic act. It has its existence by the act of the legislative assembly of the territory, and its jurisdiction, and as well the right and the manner of appeal from its judgments, are defined solely by the legislature. Section 1869 of the organic act, therefore, has no application to this particular appeal; and resort can alone be had to our own legislative enactments on the subjects, to determine the right of appeal in this case. We are aware that the organic act of Arizona does not ex-

pressly provide for district courts; but the supreme court of the United States, in the case of *Lothrop,* 118 U. S. 113, 6 Sup. Ct. Rep. 984, practically holds that the district courts created by title 23 of the Revised Statutes of the United States do exist here. It will be noted that section 846, which provides for appeals generally, without regard to the character of the action, in which the judgment appealed from is rendered, was approved February 14, 1887; that is, before the enactment of sections 592 and 593. The provisions of sections 846 and of 592 and 593, are irreconcilable, and the provisions of sections 592 and 593 are repugnant. Ordinarily the rules of statutory construction would require us to give effect to the latest enactment of the legislature; that being its last expression of its intention, and hence to prevail. Applying this rule the provisions of section 846 must give way to those of sections 592 and 593. But, as we have noted, the provisions of sections 592 and 593 are repugnant to each other, and they are parts of the same act of the legislature. The several parts of the Revised Statutes of 1887 were compiled by a commission appointed for that purpose under the provisions of an act of the territorial legislature approved January 17, 1887. That commission was authorized to revise the laws of this territory, eliminating therefrom all crude, useless, imperfect, and contradictory matter, and inserting such new provisions as they may deem necessary and proper. Rev. Stats. Ariz. 1887, sec. 3275. The commission was required by the same act to report, as soon as they may have been prepared, laws on any particular subject. Id., sec. 3276. The commission was authorized to remain in session after the adjournment of the legislative session to prepare the Revised Laws for publication. Id., sec. 3280. Pursuant to these provisions the commission met, and proceeded to the discharge of their duties. They reported from time to time, as they were prepared, the several parts of the Revised Statutes, and they were generally approved by the legislature in the order of their presentation. Nothing appears in the Revision itself, nor in the provisions authorizing it, to indicate that any part should take precedence over any other, from the mere accident that all were not simultaneously expressed as the will of the legislature. On the other hand, we think it fair to presume that it was the intention of

the legislature, by its very act of appointing the revision commission, that the result, as finally completed, should constitute one continuous, consistent, homogeneous, simultaneous compilation of our statutory law. For the purpose of construction, at least, where it is not otherwise provided, we may consider the entire code pertaining to the establishment of courts, the definition of their jurisdiction, and the procedure and practice therein, as one act, adopted and approved on the same day, and by the same enactment.

But with this view the difficulty of the attempt to reconcile the provisions of sections 592 and 593 with each other, as well as with the provisions of section 846, still remains. Section 592, standing alone, we think, confers upon this court appellate jurisdiction in all cases, provided that, when the subject of litigation is capable of pecuniary computation, the matter in dispute must exceed in value or amount one hundred dollars, unless the legality of a tax, impost, toll, or municipal fine is drawn in question. *Conant* v. *Conant*, 10 Cal. 253, 70 Am. Dec. 717; *Dumphy* v. *Guindon*, 13 Cal. 29. And here it may be noted that there has evidently been an error in transcribing this section. After the words "one hundred dollars," there should be a semicolon, and the clause, "or questions of law alone," should read, "on questions of law alone." See cases above cited, and Comp. Laws Ariz., sec. 2339. If the amount in section 593 were one hundred dollars, instead of two hundred dollars, the repugnancy between sections 592 and 593 would be reconcilable. We can conceive of no reason why this difference in amount should have occurred. By reference to the Compiled Laws of 1877, it will be seen whence the provisions of the Revision of 1887 were derived. Comp. Laws 1877, secs. 2339, 2340. The expression, "where the matter in dispute exceeds one hundred dollars," has in the Revision of 1887 (sec. 592) been added to section 2339 in the compilation of 1877. In re-enacting section 2340, "one hundred dollars," there appearing, was made "two hundred dollars" in section 593 of the Revision of 1887. We cannot avoid the conclusion that an unintentional error has crept in, and that "two hundred dollars," in section 593 of the Revised Statutes of 1887 should read "one hundred dollars." So reading it, our construction of sections 592 and 593 is, that section 592 confers

appellate jurisdiction upon this court in all cases, provided
the amount in dispute, if capable of pecuniary computation,
exceeds one hundred dollars, unless the legality of a tax, toll,
impost, or municipal fine is in question, and unless, in crimi-
nal cases, the crime is of less grade than felony. Section 593
simply authorizes this court, in a case appealed under the pro-
visions of section 592, to review, not only the judgment itself,
but any intermediate order involving the merits, and neces-
sarily affecting the judgment,—orders granting or refusing
a new trial, sustaining or overruling a demurrer, or affecting
a substantial right in the action or proceeding so appealed.

Still the conflict between the sections 592 and 593, as con-
strued, and section 846, as to the amount in dispute, remains.
Section 846 provides for appeals from the final judgments in
all civil cases. Section 592 limits the right to certain cases.
The right sought to be given by these provisions is to have an
erroneous judgment of the district courts reviewed and cor-
rected by the supreme court. Section 846 gives the right in
all cases. Section 592 is inconsistent with that, and limits
the right. In such a case, applying a well-known rule of
statutory construction, we construe in favor of the enlarged
right, rather than of the limited one. Our construction of the
statute on the subject of appeals, then, is that an appeal from
the final judgment of the district court in all civil cases is al-
lowed; that, upon such appeal from a final judgment, this court
may review any intermediate order involving the merits, and
necessarily affecting the judgment,—orders granting or re-
fusing new trials, sustaining or overruling demurrers, or
affecting any substantial rights of the parties,—and may
render such judgment or make such order therein as may be
proper to save the rights of the parties. Of course, in special
proceedings, this right of appeal may be expressly limited,
as we decided in *Bishop* v. *Perrin, ante,* p. 350, 29 Pac. 648,
(at this term).

The contract of purchase was in writing. Appellee answered
by the general denial; and; *second,* that the alleged contract
in writing was had and obtained by means of the imposture,
deceit, and fraud of the appellant. Appellee alleges in his
answer that on or about the seventeenth day of April, 1888,
he was approached by an agent of appellant, who represented

to appellee that appellant was about to publish a book which would contain certain biographical sketches of prominent and distinguished gentlemen of the territory, and among them a memoir of the appellee; that said agent procured from appellee information of and concerning certain facts and reminiscences touching the life, career, and business, and antecedents of appellee, to the end that appellant might make publication thereof in said book, whereupon said agent importuned appellee to subscribe for and receive one copy, and no more; that appellee, being disposed to read of and concerning himself, agreed to subscribe for said book, and then and there appellee orally contracted and agreed, but in no other way, with appellant, to receive and pay for, when delivered, one copy, and no more, of said book, that appellee, as said agent then well knew, neither made nor intended to make any other or different contract; that, after the making of said oral contract, said agent forthwith deceitfully and fraudulently, and with intent to cheat, defraud, and circumvent appellee, substituted for and in place of said oral agreement, and presented to appellee for his signature, a certain other and different contract, being the contract sued on; that appellee, relying upon the fidelity and common honesty of said agent, and believing that said agent had in said written contract truthfully represented the wish and intention of appellee, and not suspecting the said fraudulent substitution, signed said contract under that impression; that, if appellee had known of such substitution, he would not have signed it; that, upon the discovery of the fraud, he promptly repudiated the alleged contract, and refused to accept the books. This answer was duly verified. Appellant demurred to the answer, which demurrer was overruled, and this is the first error complained of. The allegations in this answer of the representations by the appellant of its intention to publish biographical sketches, including that of appellee, as pleaded, are wholly irrelevant, and should be stricken out. It is not alleged that these representations were false, or that appellee was induced to subscribe because of his disposition to read of and concerning himself in the book; nor can fraud be predicated upon a representation of an existing intent to hereafter do or not do a particular thing. It does not appear but that the bio-

graphical sketch of appellee, among those of other prominent and distinguished gentlemen of the territory, appears in the book, and, inasmuch as the *data* therefor were furnished by appellee himself, we cannot know but that the gratification he experiences from reading of and concerning himself amply recompenses him for the trouble he incurred in furnishing the *data,* and the price he agreed to pay for the book. There remains of the answer simply that appellee made an oral agreement, and that, immediately thereupon, appellant fraudulently substituted a written memorandum expressing an entirely different contract. The application of the epithet "fraudulent" to a transaction is not a sufficient allegation in a pleading of fraud. It is not unusual that the terms of a contract subsequently reduced to writing should first have been orally agreed upon, and the subsequent written contract is a substitution. There is no allegation in this answer that the substitution was accompanied by any act or characterized by any omission of appellant's agent that would warrant the inference that any imposition upon appellee had been practiced. It does not appear, and we cannot assume, that appellee could not read. His expressed willingness to read of and concerning himself in the book negatives such an assumption. It does not appear that appellant's agent concealed from him the contents of the memorandum, or that he falsely read it to appellee. It seems that, if in fact there had been a substitution of a different agreement for the one appellee alleges he made, it was due to the utter carelessness and negligence of appellee himself. Negligence on the part of the appellee would not be a ground for withholding relief against fraud, if fraud actually existed; but, as we have said, there is no proper allegation of fraud. Courts will not undertake to protect men against such a total want of caution and care as appears in this case, from appellee's own allegations. There was nothing in the relation of the parties to warrant such childlike confidence in the fidelity and common honesty of appellant's agent as that displayed by appellee. The mere suggestion that the oral contract, which appellee says was complete, be reduced to writing, ought to have prompted appellee to a reasonable degree of care in its execution. The demurrer to the answer should have been sustained. There

was a trial and finding for defendant. There was a motion for a new trial, which was overruled.

We would not disturb the finding of the lower court if there was simply a conflict of evidence. The defendant testified that appellant's agent called on him, and stated the intention of appellant to publish a history of Arizona, in which was to be incorporated biographies of prominent and distinguished men of the territory, and that he (appellant's agent) was getting *data* therefor; that the agent asked him if he would take a copy; that the agent pretended to be making sketches—to be writing—at the time; that appellee said he would take a copy, and started to leave the room, when the agent recalled him and said, "Wait a moment, and I will get you to sign an order;" that the agent thereupon wrote it, handed it to appellee, who thereupon signed it without noticing it, and shoved it back. Long, the agent, testified that he met appellee in Prescott, and stated to him that he desired to gather information to be used by Bancroft in the completion of his history of Arizona; that appellee gave him some general information; that he did not agree or represent that the biography of appellee would be published in the work; that he there explained the character and scope of the Bancroft series, and solicited his subscription therefor; that he explained that the complete work consisted of thirty-nine volumes, twenty-eight of which were then issued; that nothing was said in regard to his subscription for one volume; that appellee then designated the style of binding he wanted; that he (the agent) then sat down in Mr. Dougherty's presence, and filled out the contract, style of binding, and terms of payment; that appellee then took the contract, looked it over, and signed it. It was admitted at the trial that the thirty-one volumes had been consigned by appellant to appellee, and that appellee refused to accept them. The contract itself was introduced in evidence. There is some other testimony in the record, but it is all incompetent, and need not be considered. In the cross-examination appellee admits that the agent explained to him that the work consisted of a number of volumes, embodying the history of all the states and territories and of Old Mexico. Taking the statements of appellee as absolutely true, we think the court should have found for the appellant.

The written contract was the only evidence of the contract as finally made, unless it be vitiated by fraud. There is no evidence that appellee could not read. Nothing was said or done to prevent appellee reading the contract before signing, or to induce him not to read it. It was handed to him, and he had every opportunity to read it. No statement of any kind was made to him by appellant's agent of the contents of the contract before he signed it. The contract was not misread to him. Even if it be conceded that appellee contracted orally for the one book, nevertheless that contract was merged in the written one, and the written one must prevail. A person of ordinary intelligence is bound to know the contents and nature of an instrument he signs, unless he was imposed upon by some fraudulent device in the procuration of his signature.

Appellant complains of the rejection of testimony of certain witnesses, to the effect that appellant's agent, about the time of the transaction in this case, solicited subscription for the entire thirty-nine volumes, and not for any less. This was irrelevant, and was properly rejected. The judgment of the district court for Yavapai County is reversed, and that court is directed to grant a new trial and to sustain the demurrer to appellee's second answer.

Gooding, C. J., and Wells, J., concur.