[No. 9984. In Bank.—June 29, 1885.]

SARAH ALTHEA SHARON, RESPONDENT, v. WIL-
LIAM SHARON, APPELLANT.

DIVORCE—ACTION IN EQUITY—SUPREME COURT—JURISDICTION.—An action for
divorce is a case in equity within the meaning of the clause of the Constitution
conferring appellate jurisdiction on the Supreme Court.

ID.—ACTION TO ESTABLISH MARRIAGE.—An action brought under section 78 of the
Civil Code for the purpose of determining the validity of a disputed marriage is
in its nature a suit in equity, and from the judgment therein an appeal lies to
the Supreme Court.

ID.—ORDER FOR ALIMONY AND COUNSEL FEES APPEALABLE—FINAL JUDGMENT.
—In an action for divorce, an order made *pendente lite*, for the payment by the
husband to the wife of temporary alimony and counsel fees, is in effect a final
judgment, and therefore appealable. Such an order cannot be reviewed on an
appeal from the judgment decreeing a divorce.

ID.—STAYING PROCEEDINGS ON ORDER—SUFFICIENCY OF UNDERTAKING.—The order
required the defendant to pay to the plaintiff, on or before the 9th day of March,
1885, the sum of $7,500 as alimony, and thereafter the sum of $2,500 monthly,
until the further order of the court; it also required the defendant to pay the
sum of $55,000 as counsel fees. On appeal from the order, the defendant filed
an undertaking to stay proceedings in the sum of $305,000, being double the
amount of the gross sums allowed for alimony and counsel fees, and double the
amount of the monthly payments for the period of three years, assumed to be
the period during which the appeal would probably be pending. *Held*, that
the undertaking was sufficient to stay proceedings on the order pending the
appeal.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco, and from an order awarding
alimony and counsel fees.

The action was brought to obtain a decree declaring a mar-
riage to exist between the appellant and the respondent, and
for a divorce. Judgment was rendered in favor of the plaintiff
establishing the validity of the marriage, and granting her a
divorce. Prior to such judgment the trial court made an order
requiring the defendant to pay to the plaintiff alimony and
counsel fees. The terms of this order are stated in the last
head-note. From the judgment decreeing a divorce and from
this order the defendant appealed, and subsequently obtained
from the Supreme Court an order to show cause why the
proceedings upon the order for the payment of alimony and
counsel fees should not be stayed pending the appeal. The
respondent thereupon moved to dismiss the appeal both from
the judgment and the order. The further facts are stated in

the opinion of the court, and in the dissenting opinion of MR. JUSTICE McKEE.

*Stewart & Herrin,* for Appellant.

An action for a divorce is a case in equity within the meaning of the Constitution of 1879, as well as under the prior Constitution. The Supreme Court has, consequently, jurisdiction of an appeal from a judgment rendered therein. (*Lyons* v. *Lyons,* 18 Cal. 448; *Hyatt* v. *Allen,* 54 Cal. 353; *Palache* v. *Hunt,* 64 Cal. 473; *Brock* v. *Bruce,* 5 Cal. 279; *People* v. *Mier,* 24 Cal. 61; *Mahlstadt* v. *Blanc,* 34 Cal. 577; 1 Pomeroy's Eq. Jur. §§ 112, 171; *Courtwright* v. *Bear R. W. & M. Co.* 30 Cal. 573, 585.) The order granting alimony and counsel fees is reviewable on a direct appeal therefrom. Such order is in the nature of a final judgment. (*Blake* v. *Blake,* 80 Ill. 523; *Foss* v. *Foss,* 100 Ill. 576; *Hecht* v. *Hecht,* 28 Ark. 92; *Casteel* v. *Casteel,* 38 Ark. 477; *Lochnane* v. *Lochnane,* 78 Ky. 467; *Golding* v. *Golding,* 74 Mo. 123; *Adams* v. *Woods,* 18 Cal. 31; *Lewis* v. *Campau,* 14 Mich. 458; *Barry* v. *Briggs,* 22 Mich. 201; *Smith* v. *Walker,* 22 N. W. Rep. 267; *Thompson* v. *McKim,* 6 Har. & J. 302; *Hagthrop* v. *Hook,* 1 Gill & J. 270; *Williamson* v. *Carnan,* 1 Gill & J. 184; *Ware* v. *Richardson,* 3 Md. 505; *Tucker* v. *Yell,* 25 Ark. 420; *Forgay* v. *Conrad,* 6 How. 201; *Craighead* v. *Wilson,* 18 How. 199; *Bronson* v. *Railroad Co.* 2 Black, 524; *Thomson* v. *Dean,* 7 Wall. 342; *Trustees* v. *Greenough,* 105 U. S. 527; *Chicago & V. R. R. Co.* v. *Fosdick,* 106 U. S. 47.)

*W. H. L. Barnes, F. G. Newlands,* and *O. P. Evans,* also for Appellant.

*Tyler & Tyler, D. S. Terry, Flournoy, Mhoon & Flournoy,* and *Walter H. Levy,* for Respondent.

No appeal lies from the order awarding alimony and counsel fees. (Code Civ. Proc. § 939; *Call* v. *Call,* 65 Me. 407; *Russell* v. *Russell,* 69 Me. 338; *Cooper* v. *Mayhew,* 40 Mich. 528; *Sparhawk* v. *Sparhawk,* 120 Mass. 390; *Ross* v. *Ross,* 47 Mich. 186; *Gordon* v. *Gordon,* 88 N. C. 53; *Earles* v. *Earles,* 26 Kan. 178; *Webber* v. *Webber,* 79 N. C. 572; *Mangles* v.

*Mangels*, 6 Mo. App. 481; *Jenkins* v. *Jenkins*, 91 Ill. 167; *Lishey* v. *Lishey*, 6 Tenn. 418; *Richardson* v. *Curtis*, 2 Gray, 497; *Adams* v. *Hampton*, 13 Gray, 439; *Williams* v. *Hadley*, 19 Pick. 379; *Tenly* v. *Mahony*, 21 Pick. 212.) An action for a divorce is not a case in equity under the Constitution of 1879, and the Supreme Court has no appellate jurisdiction therein. (*Conant* v. *Conant*, 10 Cal. 249; *Knowles* v. *Yates*, 31 Cal. 82; Const. of 1879, §§ 4, 5, art. vi.; *Houghton's Appeal*, 42 Cal. 65; *Bixler's Appeal*, 59 Cal. 550; Bishop on Marriage and Divorce, § 71; *Perry* v. *Perry*, 2 Paige, 501; *Burtis* v. *Burtis*, 1 Hopk. Ch. 628; *Williams* v. *Williams*, 1 Johns. Ch. 488; *Whitmore* v. *Whitmore*, 4 Johns. Ch. 343; *Barbour* v. *Barbour*, 21 How. 582; *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456.

SHARPSTEIN, J.—The order to show cause why all proceedings upon the order of the court below for the payment of alimony and counsel fees should not be staid, pending the appeals from the order and judgment, and the motions to have said appeals dismissed, devolve upon us the consideration and determination of the following questions:—

1. Has this court appellate jurisdiction in actions of divorce?

2. Can the order for the payment of alimony and counsel fees be reviewed on an appeal from the judgment?

3. Can this court entertain jurisdiction of the direct appeal from that order?

Although this court has, during a period almost coeval with its existence, heard and determined appeals in divorce cases, its jurisdiction to do so has not until now been sharply challenged. In *Conant* v. *Conant*, 10 Cal. 250, the appellate jurisdiction was disputed only in cases in which no question of property was involved. With that exception, the complete appellate jurisdiction of this court in such cases appears to have been uniformly acquiesced in.

The first Constitution conferred appellate jurisdiction on this court in all cases in which the matter in dispute exceeded $200; the next, " in all cases in equity," and the present Constitution likewise confers appellate jurisdiction on this court " in all cases in equity." Appellate jurisdiction in other enumerated cases was and is conferred, but the jurisdiction of this court of an

action of divorce, in our opinion, depends on its being, in this State, at least, a case "in equity." The first Constitution prohibited the granting of divorces by the legislature, but did not confer the power to grant them on any court, unless the conferring of "jurisdiction in law and equity in all civil cases," on the District Courts, conferred it on those courts. And in the earliest reported case of divorce to which our attention has been directed, the first pleading on the part of the plaintiff is denominated, in the opinion of the court, " a bill filed for a divorce." (*Kashaw* v. *Kashaw*, 3 Cal. 312.) And in *Fuller* v. *Fuller*, 17 Cal. 605, the court denominates the complaint "a bill for divorce." There was then, as now, but one form of civil actions in this State, and the first pleading on the part of the plaintiff was then, as now, "a complaint." In equity cases, however, but in none other, so far as we are advised, the courts of this State sometimes, and not infrequently, refer to the first pleading on the part of the plaintiff as "a bill."

Under the first Constitution, as before stated, the appellate jurisdiction of this court embraced all cases, when the matter in dispute exceeded $200. No distinction was made between cases in equity and at law. But in *Conant* v. *Conant*, 10 Cal. 249, this was construed to mean what *is* clearly expressed in subsequent Constitutions, viz., "appellate jurisdiction in all cases in equity," and in certain enumerated cases at law. The court, Field, J., delivering the opinion, said: "It never could have been the intention of the framers of the Constitution to deny to the higher courts both original and appellate jurisdiction in that large class of cases where the relief sought is not susceptible of pecuniary estimation."

In *Lyons* v. *Lyons*, 18 Cal. 447, the court filed no findings of fact or conclusion of law, and it was contended by the appellant's counsel that it constituted a sufficient ground for the reversal of the judgment. But this court, Cope, J., delivering the opinion, said: "*This is a suit in equity*, and the only error assigned is that there are no findings to support the judgment." He then cites *Walker* v. *Sedgwick*, 5 Cal. 192, in which it was held that the statute which required findings to be filed did not apply to cases in equity.

These cases all arose and were decided before any change had

been made in the original Constitution. And when revised it clearly expressed what it had before been construed to mean. From the time of that revision down to the date of the adoption of the present Constitution this court entertained appeals in divorce cases, and its jurisdiction to do so does not appear to have been questioned. And we are bound to presume that when the framers of the present Constitution literally copied from the late Constitution the clause defining appellate jurisdiction of this court in cases in equity, they knew how it had been construed, and intended that it should thereafter be construed as it theretofore had been. "It is a safe rule of construction that, when framing the organic law of the State, the convention thought proper to borrow provisions from the Constitutions of other States, which provisions had already received a judicial construction, they adopted the provisions in view of such construction and acquiesced in its correctness." (*People* v. *Coleman*, 4 Cal. 46.) *A fortiori*, when a clause in an earlier Constitution, after having received a judicial construction, is copied into a later one of the same State.

It is, however, contended, that while there is no difference between the clauses of the late and present Constitutions, which define the appellate jurisdiction of this court in equity cases, its jurisdiction in divorce cases, if it ever had any, is taken away by the clause in the present Constitution which defines the jurisdiction of Superior Courts, and which expressly confers on them original jurisdiction " in actions of divorce."

In support of that theory it is said that the common law of England prevails here, except so far as it is superseded or modified by some statute or fundamental law of our own, and that at common law no court could grant a divorce *a vinculo*, Parliament alone having that power. Therefore it is claimed that no court, in the absence of some statutory or constitutional provision expressly conferring that jurisdiction upon it, can exercise original or appellate jurisdiction in divorce cases; that in analogy to the procedure in England the legislatures of the several States of the United States, in the absence of any statutory or constitutional provision on the subject, would possess the exclusive power to grant divorces *a vinculo*, in their respective States; and that this gives great significance to the action of

the late constitutional convention, in conferring upon Superior Courts original jurisdiction of actions "of divorce," *eo nomine*, and in omitting any express mention of them in the clause which defines the jurisdiction of this court. The effect claimed for this is that it confers on the Superior Courts a jurisdiction which their predecessors the District Courts exercised under Constitutions which did not expressly confer on them jurisdiction in divorce cases; and deprives this court of a jurisdiction which it exercised unchallenged for fifteen years, basing its right to do so upon a constitutional provision, of which a literal copy may be found in the present Constitution.

It is true that divorces *a vinculo matrimonii* in Great Britain were, at least for a long time prior to 1858, granted by act of Parliament exclusively; but it is not quite so clear that such divorces were not at one time granted by the High Court of Chancery, which borrowed its jurisdiction from the *æquitas* and judicial powers of the Roman magistrates. In *Wightman* v. *Wightman*, 4 Johns. Ch. 343, Chancellor Kent says: " All matrimonial and other causes of ecclesiastical cognizance belonged originally to the temporal courts (*vide* the case of *Legitimation and Bastardy*, Sir J. Davis' Rep. 240, and his argument in the case of *Præmunire*, 273); and when the spiritual courts cease, the cognizance of such causes would seem as of course to revert to the *lay* tribunals." From the argument in the *Præmunire* case above cited we extract the following paragraph: —

" First, then, let us see when this distinction of ecclesiastical or spiritual causes from civil and temporal causes did first begin in point of jurisdiction. Assuredly for the space of 300 years after Christ this distinction was not known or heard of in the Christian world. For the causes of testaments, of matrimony, of bastardy, and adultery and the rest, which are called ecclesiastical or spiritual causes, were merely civil and determined by the rules of the civil law, and subject only to the jurisdiction of the civil magistrate as all civilians will testify with me."

Gibbon says: " The magistrates of Justinian were not subject to the authority of the church; the emperor consulted the unbelieving civilians of antiquity; and the choice of matrimonial laws in the Code and Pandects is directed by the earthly motives of justice, policy, and the natural freedom of both sexes."

It is clear, therefore, that in Roman jurisprudence divorce cases were heard and determined by the civil magistrates, who had jurisdiction of cases both at law and in equity as we now distinguish them.

"In the reign of Richard II., the barons formally declared that they would not suffer the kingdom to be governed by the Roman law; and the common-law judges prohibited it from being any longer cited in their courts. This action was certainly a mistake, and it produced an opposite effect from the one intended. *The Roman law instead of being banished was simply transferred to another court which was not governed by common-law doctrines.* As the law courts cut themselves off from all opportunity of borrowing equitable principles from this foreign source, the necessity arose for a separate tribunal in which those principles could be recognized. It therefore followed immediately upon this prohibition that the hitherto narrow jurisdiction of the Court of Chancery was greatly increased, and extended over subject-matters which required an ample and constant use of Roman law doctrines." (1 Pomeroy's Eq. 20.) It would not necessarily follow from this that the Court of Chancery succeeded to all the powers of the Roman magistrates, except those which the common-law courts were administering; but it does seem to us that the Court of Chancery might, unless prohibited by act of Parliament, have exercised jurisdiction in matrimonial as well as in other causes. And there is some evidence of its having done so. "Tothill, in his transactions of the Court of Chancery, states that there are on the rolls of the court two decrees for divorce (but of what description he does not mention) in the time of Henry VIII.; and two in the time of Elizabeth, after verdicts in the Court of Queen's Bench, I presume for adultery. I have been unable to discover them even with the help of Mr. Munro. *It is not unlikely, however, that the Court of Chancery under its clerical chancellors exercised jurisdiction to decree a divorce a vinculo matrimonii.*" (1 Spence's Eq. 702.) The first edition of Tothill's book was published in 1649, and as he is styled a "famous lawyer," it is highly probable that what he relates as having occurred not long before the time in which he lived actually took place.

Conceding, however, the fact to be otherwise, it is quite clear that the civil courts did not decline such jurisdiction because it

had been conferred on the spiritual courts. If those courts ever claimed the power, they never, after a date long anterior to the Reformation, attempted to decree a divorce *a vinculo matrimonii.* For more than 200 years, at least prior to a recent date, when the divorce court was established in England, marriage was there treated as a status or condition which was indissoluble except by death or act of Paliament.

"But the marriage status is entered into through the door of an ordinary contract; and for avoiding ordinary contracts, the jurisdiction of equity extends to all questions of fraud, mistake, duress, and lunacy. Hence, when an impediment of this sort intervenes, and jurisdiction for nullity has been conferred on no court by statute, our equity tribunals will entertain the complaint and declare the marriage void. Equity in England will not do this, because formerly there was an express jurisdiction in the ecclesiastical courts, and now there is in the divorce courts." (2 Bishop on Marriage and Divorce, § 291.)

Now, as before the statute permitting divorces by courts, the contract is to assume the duties and obligations of matrimony. The contracting parties cannot limit those duties or obligations, nor expressly provide that their binding force shall last for a period other than life. But the duties and obligations are assumed only by the mutual consent of the parties, and marriage itself is often spoken of by law-writers and judges (without material inaccuracy) as a "civil contract." Assuming, however, the marital status, into which the parties enter through a contract, is itself more than or different from ordinary contracts, yet when the legislature of this State provided that the relations between husband and wife, previously indissoluble, might be terminated as the result of a judicial proceeding, the nature of the status was, *to that extent,* modified, and it assumed the character of a contract, from future compliance with the obligations of which the parties cannot indeed release each other, but from which they may be relieved by the decree of an appropriate tribunal. Under the statute the marriage state is subject to termination by judicial decree. This element of possible disseverance affects the contract because the parties marry in view of a possible divorce, and the decree of divorce operates on the contractual relations by relieving the spouses of the duties they have

assumed towards each other by or through a contract. The power to divorce, which, save for the prohibition of the Constitution, could have been exercised by the legislature, has become judicial. Courts of equity have jurisdiction to decree or declare dissolution of copartnerships, and of other like contracts entered into to continue indefinitely, where there are mutual and continuing conditions. It would seem there could be little doubt that, when marriage has been deprived of its quality of indissolubility, and no special tribunal has been created for divorce cases, courts of equity should assume cognizance of such actions. Courts of equity have always exercised an analogous jurisdiction; their modes of procedure are adapted to the inquiries involved, and their decrees are more specific and flexible than the ordinary law judgments.

It is therefore not surprising that this court should have uniformly regarded actions of divorce as "cases in equity."

The fact that it did so regard them is too clear to admit of doubt, and that being so, its reasons for so regarding them are not now important. Our position is that for a period of thirty years next preceding the adoption of the present Constitution, actions of divorce were uniformly held to be "cases in equity," and that the framers of the present Constitution were aware of that when they conferred on this court jurisdiction "in all cases in equity."

On the other hand, it is contended that the framers of the present Constitution manifested their intention to effect a material change in that respect by conferring original jurisdiction on the Superior Court in actions of divorce eo nomine, and omitting to confer appellate jurisdiction in divorce cases eo nomine on this court.

But it conferred no other or greater jurisdiction on the Superior Courts in divorce cases than their predecessors the District Courts had exercised from the first under Constitutions in which no special mention was made of such cases. And from 1873 down to the date of the adoption of the present Constitution there was no statute in force which expressly conferred such jurisdiction on the late District Courts. The language of the Code was and is that, "marriage may be dissolved:—

"1. By the death of either of the parties; or

LXVII. CAL. — 13.

" 2. By a divorce adjudged by a court of competent juris-
diction."

To ascertain what court had "competent jurisdiction" it was
necessary to consult the Constitution, which simply declared that
"the District Courts shall have original jurisdiction in all cases
in equity," etc. Why original jurisdiction in actions of divorce
was not expressly conferred by the Code, as it had previously
been by statute, on the District Courts, we will not attempt to
explain. But from January 1, 1873, down to the time when
the present Constitution went into effect, the District Courts
derived whatever jurisdiction they had in divorce cases from the
same source that this court has always claimed to derive its
jurisdiction in such cases, viz., the Constitution. Nor can we
satisfactorily explain why the words "of divorce and for the
annulment of marriage," which are not to be found in either
of the earlier Constitutions, were inserted in the present Con-
stitution. They give the Superior Courts no greater or other
jurisdiction in such cases than their predecessors, the District
Courts had exercised under both of the former Constitutions,
neither of which contained those words. And we cannot adopt
the suggestion that they were inserted in the clause defining the
*original* jurisdiction of the *Superior Courts*, for the purpose of
curtailing the *appellate* jurisdiction of *this court*. That is not
the way in which the framers of Constitutions and laws express
their intentions. If the intention had been to take from this
court the jurisdiction which it had previously exercised in divorce
cases, the very clause, under which, for a period of seventeen
years, it had claimed such jurisdiction, would not have been
copied *verbatim*.

But while entertaining no doubt of the appellate jurisdiction
of this court in divorce cases, pure and simple, it is at least
pertinent to remark that this is not simply an action of divorce.
Section 78 of the Civil Code provides: "If either party denies
the same, or refuses to join in a declaration thereof, the other
may proceed by action in the Superior Court to have the validity
of the marriage determined and declared." The first count of
the complaint or separate statement of a cause of action herein,
after alleging in three paragraphs, the residence of plaintiff, her
marriage with defendant, their cohabitation as husband and

wife, and that on the 25th of August, 1880, they jointly made a written declaration of marriage, proceeds to aver that, about the 21st of November, 1881, "the defendant demanded of plaintiff a surrender to him of said declaration of marriage, and threatened plaintiff with personal violence in case she refused to comply with said demand; *refused to recognize his said marriage* with plaintiff, drove the plaintiff away from him, and refused to live or cohabit with her unless she complied with his demand; and the defendant, for more than one year last past, has not lived with plaintiff, nor has he requested her to return to or live with him, thereby wilfully deserting the plaintiff." The answer denies the marriage and execution of the declaration. The prayer of the plaintiff is that "her marriage with said defendant may be declared legal and *valid*, and that she may be divorced," etc. If the plaintiff had utterly failed to prove any cause for divorce she would have been entitled to a decree declaring the alleged marriage valid, if the evidence established the fact of marriage. An action to have the validity of a disputed marriage determined and declared, under section 78 of the Civil Code, is in its nature a suit in equity. Such an action is not a "special proceeding," for even if it should be conceded that the right was newly created, no special proceedings for enforcing it are provided by the statute. The judgment herein in effect responds to the prayer of the complaint and declares that the alleged marriage was a valid marriage. From that portion of the decree, in any view of the case, an appeal lies.

If the order for the payment of alimony and counsel fees is in the nature of a final judgment, it is appealable. It certainly possesses all the essential elements of a final judgment. Nothing remained to be done except to enforce it, and for that purpose an execution might issue and be proceeded on, as if the judgment had been rendered in an ordinary action for the recovery of a specific sum of money. Although the pendency of an action for divorce constituted the basis of the order, it was no part of the relief demanded by the plaintiff in her complaint. She might at any time during the pendency of the action have applied to the court for such an order. And if granted it would not be affected by subsequent proceedings in the action. Its validity would not depend in any way on the result of the action. If

the court had afterward found that the marriage relation never existed between the parties, that would not have affected the order for the payment of *temporary* alimony. It would have afforded good ground for vacating it. It was to all intents and purposes, "a final judgment entered in an action." Quite as much so as the decree of divorce in this case in which "the question of property" is reserved for future consideration, "with leave to the plaintiff to apply upon the coming in of the referee's report . . . . for a future and *final decree.*" But it has not been suggested that the decree appealed from is not a final judgment in the action. It is final upon the questions adjudicated in it, and the order for the payment of temporary alimony is a final judgment upon all the questions adjudicated in it.

A final judgment is not necessarily the last one in an action. A judgment that is conclusive of any question in a case is final as to that question. The Code provides for an appeal from *a* final judgment, not from *the* final judgment in an action. In some of the States the question has been directly passed upon by the courts, some holding that such orders are, and others that they are not appealable. Of course, it rarely happens that the constitutions and statutes relating to appeals are precisely alike in any two States. But the reasons given by the courts for holding that appeals might or might not be taken from such orders in their respective States are worthy of consideration.

In *Lochnane* v. *Lochnane,* 78 Ky. 468, the court says: "That an appeal may be taken from a decree making an allowance to support the wife pending a suit for divorce cannot be questioned. It possesses all the essential elements of a final judgment. It may be enforced by rule or execution, and is in every respect independent of the final determination of the court as to the rights of the party in regard to the question of divorce." In *Hecht* v. *Hecht,* 28 Ark. 92, it was contended by the appellee that, inasmuch as the original suit between the parties was still pending in the Circuit Court, no appeal would lie to the Supreme Court from an order granting alimony and counsel fees until a final decree in the suit had been rendered. The court said: "Section 4, article vii., of the Constitution provides, that final judgment in the inferior courts may be brought by writ of error or by appeal into the Supreme Court, in such manner as may

be prescribed by law. It is not necessary for us, in the determination of this case, to construe this and section 15 of the same article. The order or judgment of the court is not, strictly speaking, an interlocutory one. While it may be true that a petition for alimony and attorneys' fees could not be brought as a separate and independent suit, yet it is also true that such an application and order for an allowance *pendente lite,* especially such a one as is made in this case, is, so far as it affects the rights of this appellant in its consequences, wholly independent of his suit for divorce. This is a definitive judgment, from which the appellant can have no relief by the final decree, even though it should appear that injustice had been done to him. By due process on the execution the money will have been collected and paid over to the parties in whose favor it is awarded, and its recovery will have passed beyond the power of the court. It is true that the allowance of alimony and other necessary costs is discretionary with the court trying the case, and will be interfered with by this court only upon the clearest proof that there has been a palpable abuse of that discretion. Yet when there has been such abuse which affects the substantial rights of a party, we are of the opinion that he can have redress by appeal to this court."

In *Golding* v. *Golding,* 74 Mo. 123, an appeal was taken to the Supreme Court from the judgment of the St. Louis Court of Appeals, affirming a judgment of the Circuit Court of St. Louis County granting a decree of divorce to plaintiff, and allowing to her, as alimony, the gross sum of $15,000. The Supreme Court had no jurisdiction in divorce cases, when taken there by appeal from the St. Louis Court of Appeals, to pass upon the question whether the decree granting a divorce was justified by the evidence, and it was contended for the respondent that that provision of the Constitution which permitted appeals in cases where the "amount in dispute exclusive of costs exceeds $2,500," had no application, "because the divorce was the matter in dispute, and the alimony was but an incident to the dispute." But the appellate court held against the respondent on the point and reviewed the award of alimony.

In *Blake* v. *Blake,* 80 Ill. 532, the Supreme Court of that State in ruling upon a motion exactly like the one now under

consideration said : " The question raised is one that has never been passed upon by this court, but upon first impression we are of opinion the appeal will lie. It is a money decree, is for a specific sum, and is payable absolutely. No execution has been as yet awarded, but the court has the undoubted authority to award an execution, or, if payment was wilfully and contumaciously refused, the decree might be enforced by attachment as for contempt, or payment might be coerced by sequestration of real or personal estate. By one mode or the other the decree could be enforced, and if defendant has property, it could, in some way consistently with the practice in Courts of Chancery be subjected to its payment. Such a decree does not seem to us to be merely interlocutory. It is more in the nature of a final decree, and if no appeal lies, this case affords an instance of a money decree against a party from which no relief can be had, no matter how unjust or oppressive. This ought not to be. It is no answer to this position to say, defendant can have this decree against him reviewed on appeal or error, after final decree in the original cause. Of what avail would that privilege be to him then? The litigation might be protracted, and years elapse before any final decision could be reached. In the meantime, he has been imprisoned for disobedience to the decree, or his property under process of law been subjected to the payment of the sum decreed. Nor does the fact an appeal is allowed impose any hardship not incident to other money decrees from which appeals may be prosecuted. On the theory alimony is for the immediate benefit of the wife, to enable her to prosecute or defend her suit against her husband on terms of equality, the only serious result would be to delay the litigation until the propriety of the decree for temporary alimony and solicitors' fees could be determined in the appellate court. On the contrary, if an appeal should be denied, it might subject defendant to very great hardships in many cases, as the sequel will show. It is apprehended there can be no decree against a party that will work a deprivation of his property or liberty, from which no appeal or writ of error will lie. Such is the decree against defendant. Under it he may be deprived of his liberty, or his property subjected to levy and sale."

The statute then in force in that State in relation to appeals was not substantially different from our own.

The reasoning of the Illinois court becomes much stronger when applied to the present case, where the main controversy between the parties is the question of marriage. It is, of course, indispensable to the granting of alimony at all, that the relation of husband and wife, in fact, exist. We are of opinion, therefore, that the order in question is in its legal effect a judgment and appealable as such. Indeed, the very section of the Code of Procedure under which execution was directed to be issued placed such order upon the same plane as a judgment. It reads: "Whenever an order for the payment of a sum of money is made by a court, pursuant to the provisions of this Code, it may be enforced by execution in the same manner as if it were a judgment." And by section 942 of the same Code it is provided that "if the appeal be from a judgment *or order directing the payment of money*, it does not stay the execution of the judgment *or order*, unless a written undertaking be executed on the part of the appellant," etc. Such undertaking was executed in this case, and wrought a stay of proceedings under the order.

As the order for the payment of alimony and counsel fees is an appealable order, it cannot be reviewed on the appeal from the judgment decreeing a divorce.

Motions to dismiss the appeals from the judgment and from the order for the payment of alimony and counsel fees are denied. And it is ordered that all proceedings upon the last named order and the judgment be stayed pending said appeals.

Ross, J., MYRICK, J., THORNTON, J., and McKINSTRY, J., concurred.

McKEE, J., dissenting.—I dissent. Two appeals have been taken in the case; one from the final judgment of divorce entered on the 19th of February, 1885, the other from an order made on the 16th of February, 1885, awarding to the plaintiff in the action alimony and counsel fees. To render his appeals effectual appellant has obtained from this court an order requiring respondent to show cause why, pending the appeals, all proceedings upon the judgment and order appealed from should not be

staid. This rule for a stay of proceedings has been met by a counter-motion to dismiss the appeals, upon two grounds, viz.: That the order is not appealable, and that no appellate jurisdiction of judgments of divorce has been given by law to this court. If these grounds be well taken they constitute sufficient cause against granting a stay of proceedings.

The order appealed from was made before the entry of judgment. An order made before judgment in a cause is interlocutory; that is to say, it is an order made between the commencement of the action and its final determination, incident to and during the progress of the action, which decides not the cause, but only some intervening matter relating to the cause. (2 Abb. Dict. 637.) Under the Code law of the State an appeal is the only mode in which a judgment or an order in a civil action can be reviewed. An interlocutory order is, therefore, not reviewable, except by an appeal directly from it, or from the judgment in the cause under the conditions specified in section 956 of the Code of Civil Procedure.

The right of appeal is entirely statutory. By chapter 1, title xiii., of the Code of Civil Procedure, the legislature has enumerated and defined the character and nature of the cases permitted to be appealed from the Superior Court to this court. These are :—

"Section 939. An appeal may be taken :—

"I. From a final judgment in an action or special proceeding commenced in the court in which the same is rendered, within one year after the entry of judgment; but an exception to the decision or verdict, on the ground that it is not supported by the evidence, cannot be reviewed on appeal from the judgment unless the appeal is taken within sixty days after the rendition of the judgment.

"II. From a judgment rendered on appeal from an inferior court, within ninety days after the entry of such judgment.

"III. From an order granting or refusing a new trial; from an order granting or dissolving an injunction; from an order dissolving or refusing to dissolve an attachment; from an order granting or refusing to grant a change of the place of trial; from any special order made after final judgment, and from an interlocutory judgment in actions for partition of real property, and from an order confirming, changing, modifying, or

setting aside the report, in whole or in part, of the referees in actions for partition of real property, in the cases mentioned in the provisions in section 763 of this Code, within sixty days after the order or interlocutory judgment is made and entered in the minutes of the court, or filed with the clerk."

All orders made in a case before judgment, other than those enumeratered are, therefore, unappealable; for as the remedy by appeal is purely statutory, the right cannot be extended to cases not included within the statute. Assuming, therefore, that the order appealed from is an interlocutory order, as it is not one of the interlocutory orders designated in the Code, to which the remedy of appeal attaches, no appeal can be taken from it. This is the settled law as to appeals from interlocutory orders; and it is applicable alike to all cases of law or equity. (Rhodes' Cal. Digest, vol. 1, pp. 31–33; *Broadribb* v. *Tibbets,* 60 Cal. 412; *McNevin* v. *McNevin,* 63 Cal. 186; *Holmes* v. *McCleary,* 63 Cal. 497; *People* v. *Markham,* 64 Cal. 157; *Emeric* v. *Alvarado,* 64 Cal. 529, and *Beach* v. *Hodgdon,* 66 Cal. 187.)

But the contention is, that as the order in this case commands payment of a large sum of money, it is more than interlocutory — it possesses the force and dignity of a final judgment, because the Code provides (§ 137, Civ. Code) that it may be enforced by execution; and being enforcible by execution it is equivalent to a final judgment, which is appealable.

If that position were maintainable, the giving of the requisite undertaking on appeal, as from a money judgment in a case, would itself operate under section 940 of the Code of Civil Procedure, as a stay of proceedings; and this court could, in the exercise of its appellate jurisdiction, in case of failure or omission to file a proper undertaking on appeal, permit the appellant to perfect his appeal by filing a new undertaking.

But section 940, and those sections of the Code which follow it, have no reference to non-appealable orders; they regulate the mode of appealing from final judgments, and appealable orders in suits at law or in equity.

Besides, the interlocutory character of the order appealed from is not changed by the fact that it commands payment of a large sum of money. Nor is it affected by the provision of the Code as to the process by which it may be enforced. It is the execu-

tion that may be issued upon the order to which the Code gives the ·same legal effect as if issued upon a final judgment; but it does not give to the order the effect of a final judgment. The order is unchanged in its nature by the remedy adopted for enforcing it, and the execution is given merely as an additional remedy for that purpose. As an additional remedy the court making the order is not bound to resort to it. Especially in actions of divorce it is left to the discretion of the court to enforce an order made *pendente lite* by execution, or by proceedings for contempt for not complying with it, or by requiring reasonable securities for making the payment of the money, or by the appointment of a receiver, or by any other remedy applicable to the case. (§ 140, Civ. Code.) As remedies for the enforcement of an order *pendente lite,* these with the exception of the remedy by execution are not prescribed by the Code for the enforcement of a money judgment.

Moreover, a judgment is the final sentence of the law in an original suit; a money judgment is a legal demand or a record debt upon which suit may be brought. The money order in this case is for alimony. Alimony is not an original suit; it arises out of some other suit in which a marriage *de facto* is confessed or proved. The allowance of alimony, pending such a suit, is not a debt; it is a legal liability which arises out of the obligation imposed by law upon every married man to contribute to the support of his wife. When the fact of marriage is judicially ascertained the jurisdiction of the court to award alimony, *pendente lite,* as incidental to the suit before it, may be called into exercise by the motion of the wife; and the court, in the exercise of its jurisdiction, may award it out of the community property, or the separate property of the husband. (§ 141, Civ. Code.) In making the award the court acts upon the principle that the husband and wife are jointly interested in the property and fortunes of the community, and that one is as much entitled as the other to maintenance and support out of it during the proceedings between them for a separation. So that allowing the wife alimony is only awarding her what she is as a wife lawfully entitled to. Her rights of property in the community estate are vested until divested by a judicial decree, which dissolves the marriage status, and makes distribution of the estate. Given,

therefore, jurisdiction of the parties to an action of divorce by a court of competent jurisdiction, the court also acquires jurisdiction of the estates and income of the husband for the purpose of compelling the husband to support the wife pending the action. Section 137 of the Civil Code provides:

"While an action for divorce is pending the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action. When the husband wilfully deserts the wife, she may, without applying for a divorce, maintain in the Superior Court an action against him for permanent support and maintenance of herself, or of herself and children. During the pendency of such an action the court may, in its discretion, require the husband to pay as alimony any money necessary for the prosecution of the action and for support and maintenance, and executions may issue therefor in the discretion of the court. The final judgment in such action may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or orders may be varied, altered, or revoked at the discretion of the court."

And when the court in the exercise of its discretionary power ascertains and fixes the amount of the alimony and awards it to the wife, the right to the amount awarded attaches to her and becomes vested in her as a right, and there arises a corresponding duty on the part of the husband to pay it to her. The order binds both the right and the duty; and as an order made in the exercise of a discretionary power, it is not, in its nature, or the remeny adopted for its enforcement, subject to the control of this court. It is not a debt which the husband is required to pay. It is a duty which he is bound to perform. (*Chase* v. *Ingalls*, 97 Mass. 274.) This is the settled law of the question of alimony *pendente lite* in an action of divorce.

In *Miller* v. *Miller*, 75 N. C. 71, the Supreme Court of North Carolina says: "The statute relating to divorce and alimony proceeds upon the natural duty of the husband to support the wife as well before as after divorce, and must be liberally construed to express that duty.

"Alimony is not itself an 'estate' in a technical legal sense of the word, nor is it necessarily a charge upon the husband's

estate. He may have no estate. But alimony is a mere personal charge upon the husband, or a duty imposed upon him which the courts will enforce against him from time to time, at discretion, compelling the payment thereof from his income, whether he have an estate or not."

In this State the question arose in *Ex parte Perkins*, 18 Cal. 60. There the defendant in an action of divorce was ordered, *pendente lite*, to pay to the wife a certain sum of money for her support during the litigation, and for counsel fees and other legal expenses. The court enforced its order by imprisonment for contempt in not complying with the order, and the defendant asked to be discharged from imprisonment upon the ground that the sum adjudged to be paid to the wife was a debt within the meaning of the Constitution, for which he could not be legally imprisoned. But the Supreme Court said, Mr. Justice Baldwin delivering the opinion: "This is not a debt within the meaning of the Constitution. The husband is bound to support the wife, yet this duty is an imperfect obligation which is not technically a debt. He does not owe her any specific amount of money; but he owes a duty to her which may be enforced by the order of a court compelling him to pay her money. So alimony, temporary or permanent, may be decreed by the court, and this may be done at the discretion of the court."

In the proceedings in that case it was conceded that there was no appeal from the order, because it was an order *pendente lite*, and therefore interlocutory, to which the right of appeal was not extended by section 336 of the Practice Act, which then regulated appeals to the Supreme Court from the judgments and orders of the District Courts; and the husband afterwards sought to have the order reviewed on *certiorari;* but as the alimony awarded was within the discretion of the court, it was held upon the reasons stated by Mr. Justice Baldwin to be unreviewable. (See also *Call* v. *Call,* 65 Me. 40.) The order was therefore absolute, and so far as other courts are concerned final, subject only to be changed, modified, or revoked by the court that rendered it, in the exercise of its discretionary powers.

Such being the nature of an order awarding alimony, pending an action of divorce, it is not an intermediate order which affects the merits of the action itself, or the final judgment that may

be rendered therein; for a divorce may or may not be granted in the action. It is therefore not reviewable under section 956 of the Code of Civil Procedure except by appealing from the final judgment, if the law grants the right to appeal from it. And that brings us to the consideration of the question, is there an appeal to this court from the judgment of a Superior Court in an action of divorce?

The question must be determined with reference to the Constitution of 1879, and the laws enacted in conformity to it in carrying out its provisions as to the organization and jurisdictions of the two courts. By section 5, article vi., of the Constitution, it was ordained as follows:—

" The Superior Court shall have original jurisdiction in all cases in equity, and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand, exclusive of interest or the value of the property in controversy, amounts to $300, and in all criminal cases amounting to felony, and cases of misdemeanor not otherwise provided for; of actions of forcible entry and detainer, of proceedings in insolvency, of actions to prevent or abate a nuisance, of all matters of probate, of divorce and for annulment of marriage, and of all such special cases and proceedings as are not otherwise provided for."

As organized, under and by virtue of this section, the Superior Court consists of seven or eight different courts, namely, a court of law, a court of equity, an insolvency court, a court of forcible entry and detainer, a probate court, a criminal court, a court of divorce, and a court of special cases and proceedings; and when sitting in any one of those courts, the Superior Court has and exercises jurisdictions of matters cognizable in the court.

At the same time that the Superior Court was created and partitioned off into different courts, and clothed with the jurisdiction belonging to each, the Supreme Court of the State was reorganized and invested with its appellate and original jurisdiction. Section 4, article vi., of the Constitution, declares:—

" The Supreme Court shall have appellate jurisdiction in all cases in equity, except such as arise in Justices' Courts; also in all cases at law which involve the title or possession of real

estate, or the legality of any tax, impost, assessment, toll, or municipal fine, or in which the demand, exclusive of interest, or the value of the property in controversy amounts to $300; also in cases of forcible entry and detainer, and in proceedings in insolvency, and in actions to prevent or abate a nuisance, and in all such probate matters as may be provided by law; also in all criminal cases prosecuted by indictment or information in a court of record on questions of law alone. The court shall also have power to issue writs of mandamus, *certiorari*, prohibition, and habeas corpus, and all other writs necessary or proper to the complete exercise of its appellate jurisdiction."

This grant of judicial power expressly includes within the appellate jurisdiction of the court cases of law and equity, cases of forcible entry and detainer, cases of insolvency, cases for preventing and abating nuisances, probate matters, and criminal cases; but it excludes, negatively at least, from the jurisdiction of the court, cases for annulment of marriages and of divorce, and special cases and proceedings. No express mention is made of any one of these cases as cases of which the Supreme Court has jurisdiction. Special cases, it has been adjudged, do not fall within the jurisdiction of the court (*Bixler's Appeal*, 59 Cal. 550), and for the same reasons divorce cases do not, unless they are to be considered as included within one or other of the two great divisions of administrative justice known as law and equity. (*Bixler's Appeal*, 59 Cal. 550.)

That much is conceded by counsel for appellant. It is also conceded that an action of divorce is not an action at law. They say: "It must be either an action at law, a suit in equity, or in the language of the Constitution, 'It is a case in equity or a case at law'; that is, it is the former, and not the latter, as has been generally assumed by the courts of equity in this country, and particularly so in the State of California. If an action for divorce falls within the expression 'case in equity,' then, clearly, by the terms of the Constitution this court has appellate jurisdiction in such cases."

Thus stated, the contention is reduced to the single proposition, that an action of divorce is a suit in equity, and that is the question.

The Chancery Court of England, as the "King's High Court of Conscience," claimed an elastic, original, concurrent, and

auxiliary jurisdiction under which it assumed to exercise a super-
visory control, according to equity principles, of almost all pro-
ceedings in the Superior Courts of common law.   But it never
claimed to have or exercise original or concurrent jurisdiction of
the subjects of marriage and divorce.   These were alone cogni-
zable in a court known as the ecclesiastical court, whose juris-
diction being founded on the canon or civil law, was entirely
separate from the secular jurisdiction of other courts.   It is true
that the court, under the influences of legislation and judicial
construction, slowly developed from a spiritual court into the
form prescribed for it by the common law; and the legal powers
which it exercised became part of the common law system of
jurisprudence; but it retained its name and its exclusive juris-
diction throughout all its changes in form.   With that jurisdic-
tion the Chancery Court never interfered, except incidentally,
by issuing original writs to keep the court within its jurisdiction,
or to aid it, after divorce, in enforcing its decrees or orders, or
to prevent the husband from evading by fraud payment of
alimony awarded to the wife.   Otherwise the Chancery Court
never claimed or exercised any original or concurrent jurisdic-
tion over the subjects of marriage and divorce.   These consti-
tuted the subject-matters of jurisdiction which under the common
law belonged at all times exclusively to the ecclesiastical courts.

In Fonblanque's treatise on Equity, note *n*, p. 107, it is said:
"The right to decree alimony was only exercised as incidental
to an action of divorce; and a decree of divorce, or even a separa-
tion, was never even suggested to be within the jurisdiction of a
court of equity, except after divorce or upon special agreement."
And in *Head* v. *Head*, 3 Atk. 550, Chancellor Hardwick
observed: "I do not find that this court ever made a decree for
establishing a perpetual separation between husband and wife,
or to compel a husband to pay a separate maintenance to his
wife, unless upon an agreement between them, and even upon
this unwillingly." (See Story Com. on Eq. §§ 1420–1425;
*Mattison* v. *Mattison*, 1 Strob. Eq. 381.)

So in an action in equity to prevent a decree from being
defeated by fraud, the Supreme Court of the United States took
occasion to say: "Our first remark is — and we wish it to be
remembered — that this is not a suit asking the court for the

allowance of alimony. That has been done by a court of competent jurisdiction. The court in Wisconsin was asked to interfere to prevent that decree from being defeated by fraud.

"We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery, or as an incident to divorce *a vinculo*, or to one from bed and board." (*Barber* v. *Barber*, 21 How. 584.)

Unquestionably, therefore, under the common law wherever established, no other than the ecclesiastical or spiritual court had the legal power to grant divorces or annul marriages. And that court, as a court of divorce, administered its powers by a body of principles and procedure of its own, which, in themselves, constituted a system of jurisdiction as separate and distinct as that of a court of law, or of equity or admiralty. As incidental to its power, it assumed control of the property of the parties, and allowed alimony to the wife, pending an action of divorce, on the principle that she — the husband having possessed himself of her fortune — was without sufficient means independent of him to support her in her condition in life; and it exercised its discretion in making the allotment. When made the sentence of allotment was absolute, subject only to be revised and modified by the court itself; its decisions as to matters within its jurisdiction could not be revised by the civil courts. No appeal lay from them to any secular jurisdiction. An appeal might be taken to the Pope, or to his legate, until the statute of Henry VIII. abolished that procedure and substituted an appeal to the High Court of Parliament. (Browne's Ecclesiastical Law, p. 507.)

It may be conceded that this system of jurisdiction was a part of the common law which constitutes the basis of the jurisprudence of the State, but we have never had an ecclesiastical court; yet the legal powers formerly exercised by that court were part of the sovereign power of the people of each of the several States of the United States; and the people themselves could, by constitutional command, or legislative enactment, delegate those powers to any tribunal they saw fit to create, to be exercised absolutely or otherwise. Until the people did delegate such powers they remained in abeyance; there was no inherent jurisdiction in courts of law or equity to grant divorces. Hence, at

an early day in the history of the country, Judge Gaston of
North Carolina held, that in the absence of constitutional pro-
visions, or of legislation upon the subjects of marriage and
divorce, the courts of North Carolina had no jurisdiction of
divorce suits, or to grant alimony. (*Wilson* v. *Wilson*, 2 Dev.
& B. Eq. 377.) And Chancellor Kent, in his Commentaries,
shows that, although prior to the Revolution a Court of
Chancery had existed in every one of the thirteen colonies, yet
for one hundred years preceding the Revolution, and for many
years after New York became an independent State, there was no
lawful mode of obtaining divorce until the legislature in 1787
authorized the Court of Chancery to pronounce divorces *a vin-
culo.* (2 Kent Com. 98, 125.) "The true doctrine is," says
Bishop in his treatise on Marriage and Divorce, "that no judi-
cial tribunal can take jurisdiction of divorce cases without the
authority is specially conferred by the Constitution of the State,
or by some law duly passed by the legislature. (Bishop on
Marriage and Divorce, § 71; *Jarvis* v. *Jarvis,* 3 Edw. Ch. 462;
*Jamison,* v. *Jamison,* 4 Md. Ch. 293; *Wright* v. *Wright,* 2 Md.
Ch. 447; 56 Am. Dec. 723; *Barker* v. *Dayton,* 28 Wis. 379;
*Hopkins* v. *Hopkins,* 39 Wis. 171; *Bacon* v. *Bacon,* 43 Wis.
202; *Grant* v. *Grant,* 12 S. C. 29, 31; *Cook* v. *Cook,* 56 Wis.
203; *Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456.)

Every State has the inherent right to distribute judicial
powers over such subjects to tribunals of its own creation, and
to define the jurisdiction of each, and prescribe its mode of pro-
cedure. And it will be found that most, if not all the decisions
by courts of other States cited to uphold the right of appeal in
such cases rests upon either a constitutional or legislative grant
of original jurisdiction in such cases to courts of law, or courts
of chancery, to be exercised according to legal or chancery prin-
ciples and practice, or of appellate jurisdiction to the Supreme
Court "in all cases."

Thus the States of Massachussetts and New Hampshire, by
their respective Constitutions, ordained that "causes of marriage,
divorce, and alimony, and all appeals from the judges of pro-
bate, shall be heard and determined by the governor and coun-
cil, until the legislature shall by law make other provisions."
(Art. v. ch. 3, Const. of Mass.; § 76, part II., Const. of N. H.)

Georgia, by her Constitution, prohibits divorces being granted, except on the concurrent verdicts of two special juries — the jury rendering the final verdict being authorized to determine the rights and disabilities of the parties, subject to revision by the courts upon legal principles. (§ 11, art. v. Const. of 1868.) Alabama and Mississippi, by their respective Constitutions, provide that divorces shall not be granted but in cases by suit in chancery, provided for by law. (§ 3, art. iv. Const. of Alabama; § 15, art. iii. Const. of Mississippi.)

The Constitutions of other States whose adjudications have been cited on argument contain no express grants of jurisdiction of the subjects of marriage and divorce to any judicial tribunal. Power, however, has been delegated to the legislature of each of those States to select or establish a judicial tribunal upon which to confer legal powers to annul marriages and grant divorces; and it will be found that the legislature has generally vested such jurisdiction and powers in a separate Court of Chancery, sometimes in a *nisi prius* court, and at others in a *nisi prius* court sitting as a Court of Chancery. Thus in Arkansas it is provided: "The Circuit Court, sitting as a Court of Chancery, shall have jurisdiction in all cases of divorce and alimony or maintenance, and like process and proceedings shall be had in said cases as are had in other cases on the equity side of said court." (§ 3, ch. 59, Digest of Statutes; *Bauman* v. *Bauman*, 18 Ark. 320; 68 Am. Dec. 171.) Kentucky conferred such jurisdiction upon the Chancery Court by Statute of 1809 (*Maguire* v. *Maguire*, 7 Dana, 181), Maryland by Statute of 1841, supplemented by statutes passed in 1843 and 1844 (*Brown* v. *Brown*, 2 Md. Ch. 316; *Bayly* v. *Bayly*, 2 Md. Ch. 326), New York by statute passed in 1824 (*Perry* v. *Perry*, 2 Paige, 501; *Williamson* v. *Williamson*, 1 Johns. Ch. 488), Virginia by statute passed in 1827 (*Jennings* v. *Montague*, 2 Gratt. 350), Illinois by Revised Statute of 1874 (*Dinet* v. *Eigenmann*, 88 Ill. 274), Indiana by Revised Code of 1831, confided the jurisdiction to courts of law (*Varner* v. *Varner*, 3 Blackf. 163); but in 1833 the Statute of 1831 was repealed, and the jurisdiction was expressly given to Courts of Chancery. Ohio by Statute of 1835 conferred such jurisdiction on the court of common pleas (*Hoffman* v. *Hoffman*, 15 Ohio St. 217), Rhode Island and Vermont on

the Supreme Court, until the latter State by Statute of 1870 granted jurisdiction to the county court (*Preston* v. *Preston*, 44 Vt. 630; *Thayer* v. *Thayer*, 9 R. I. 379). So that in those States divorce cases are by express statutory provisions made cases in law, or cases in equity, and appealable as such, unless as in Kentucky, under a Statute of 1816, and in Kansas under a Statute of 1860, appeals in such cases are interdicted. (*Maguire* v. *Maguire, supra; Worth* v. *Worth*, 4 Kan. 223.)

So when this State in 1879, in the exercise of its sovereign powers, amended the Constitution, it could have granted to the Superior Court as a court of law or equity, jurisdiction and powers to annul marriages, and decree divorces according to legal or equity principles and practice, and made its judgments and orders final, or revisable by this court; but it did not. The framers of the Constitution did not clothe the Superior Court as a court of law, or of equity, with such jurisdiction. In their wisdom they framed the Constitution so as to prohibit the legislature from passing special laws for granting divorces (art. iv. § 25), clothed the Superior Court with original jurisdiction of divorces and of annulment of marriages (art. vi. § 5), and this court with appellate jurisdiction in cases at law . . . . and in cases in equity . . . . and made no express provision for appeal to this court from judgments or orders in divorce cases (art. vi. § 4).

Nor has the legislature in executing the behests of the Constitution as to the organization and jurisdiction of the Superior Court made any provision for appeal from its judgment or orders in cases of divorce. It has prescribed the jurisdiction of the court as a court of divorce, a jurisdiction identical with that formerly exercised by the ecclesiastical courts, and authorized it to exercise its jurisdiction and powers in the same manner that the ecclesiastical court had exercised them, that is, at its discretion. It provided for an appeal in all cases in law and equity, and in probate matters, etc., but it provides no appeal in divorce cases.

And the reason for thus regulating the right of appeal is, we think, apparent from the nature of the jurisdiction conferred on the court. The subjects of the jurisdiction are marriage and divorce. " In respect of the Constitution of the State," says Mr.

Amos in his treatise on the Science of Law (p. 124), "marriage must be viewed as an *act* which determines the creation of a new family group, and from which act spring a number of relations, actual and possible, moral and legal; relations which, taken in their aggregate, constitute marriage as a status."

In this State marriage is also regarded in law as a status, a public institution, and more than a mere contract. Section 55 of the Civil Code defines it as "a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties, or obligations," those "actual and possible, moral and legal relations" which constitute the status.

An action for the annulment or dissolution of a matrimonial status is, therefore, not an action in equity, involving the personal and separate property of married women, the adjudication of antenuptial or postnuptial settlements and articles, or of marriage contracts absolutely void as against public policy or for fraud — subjects of which Chancery Courts have jurisdiction; it is a statutory proceeding within a jurisdiction *sui generis*, which is exercisable at the discretion of the court to which it has been confided; and the judgments and orders rendered by the court in the exercise of its discretionary powers are not reviewable.

In view of this familiar principle of law, and knowing that the judgments or orders of any of the judicial tribunals of the State, which may be voidable or void for want of jurisdiction, or excess of jurisdiction, or abuse of discretion, are reviewable by original writs issuable by the Superior Court or the Superior Courts, the legislature doubtless determined there was no reason for according the right of appeal in divorce cases; therefore no appellate jurisdiction has been by express terms prescribed to this court in such cases (§ 52, Code Civ. Proc.), and the right of appeal is withheld, except where, after granting a divorce, a question arises as to the distribution of the community property or of the homestead property. On a question concerning such property an appeal is expressly allowed by section 148 of the Civil Code, but on no other question involved in the case. Such was the nature of the appeals decided by this court in the divorce

cases of *Bovo* v. *Bovo*, 63 Cal. 77, and *Brown* v. *Brown*, 60 Cal. 579, and such have been the nature of appeals in many of the divorce cases in which appeals have been heard and decided by former Supreme Courts. (See *Kashaw* v. *Kashaw*, 3 Cal. 312; *Elmore* v. *Elmore*, 10 Cal. 224; *Gimmy* v. *Gimmy*, 22 Cal. 633, 635; *McLeran* v. *Benton*, 31 Cal. 29.) So that a decree of divorce is not only a dissolution of the matrimonial status, but it is also a dissolution of the marital rights of parties in their real estate; and while this court is denied jurisdiction to disturb that part of the decree granting a divorce, it has jurisdiction to revise that part of the decree for a division of the estate.

Undoubtedly former Supreme Courts of the State as well as the present court have heard and decided appeals in divorce cases on the merits. In no case, however, has the question to hear and determine such appeals been directly made, except in *Conant* v. *Conant*, 10 Cal. 249. In that case the appeal was taken from a divorce granted by one of the then District Courts to the Supreme Court, as then clothed with jurisdiction by the Constitution of 1849. And it was held, that under the Constitution the court had appellate jurisdiction "in all cases," except where the matter in litigation, being capable of pecuniary compensation, did not exceed in value $200. In rendering its decision the court said:—

" The fourth section of article vi., of the Constitution provides that the Supreme Court shall have appellate jurisdiction in *all cases* when the matter in dispute exceeds $200, when the legality of any tax, toll, or impost, or municipal fine is in question, and all criminal cases amounting to felony, on questions of law alone. We do not understand the last words of the first clause of this section as restricting the jurisdiction only to those cases which involve questions of property, or the legality of a tax, toll, impost, or municipal fine. As we read the section, the court possesses appellate jurisdiction in *all cases;* provided, that when the subject of litigation is capable of pecuniary compensation the matter in dispute must exceed $200."

Under the same Constitution of 1849 the Supreme Court, in the year 1861, in deciding an appeal from a divorce granted in the case of *Lyons* v. *Lyons*, 18 Cal. 447, said: " This is a suit

in equity, and the only error assigned is that there are no findings to support the judgment." And assuming it to be a suit in equity, it was held, on the authority of *Walker* v. *Sedgwick*, 5 Cal. 192, which was a chancery case, that findings were not necessary. But neither the assumption in that case, nor *Conant* v. *Conant*, which was questioned in *Knowles* v. *Yates*, 31 Cal. 82, and in *Houghton's Appeal*, 42 Cal. 35, nor the practice of dealing on appeal with divorce cases, as cases in equity, can be considered as authoritative of the question as now raised for the first time under the Constitution of 1879 and the statutes passed in executing its commands.

In view of the Constitution and the laws passed under it, I think cases of divorce and for the annulment of marriage are not cases of which appellate jurisdiction has been granted to this court. This conclusion is justified, if not sustained, by the reasoning in *Bixler's Appeal*, 59 Cal. 550, and by the decision in the case of *Church* v. *Church*, No. 9405, Jan. Sess. 1884. This last case was a case in divorce, commenced and prosecuted since the adoption of the Constitution of 1879, dissolution of the marriage was decreed; the wife was awarded the custody of the children, and the husband was adjudged to pay her out of his separate property certain sums of money for alimony and counsel fees, and for the support, maintenance, and education of the children. To enforce payment of the sums awarded for those purposes the court appointed a receiver to take charge of the separate property of the husband, collect its rents, and pay them to the wife, until the husband gave reasonable security to pay her. He refused to pay, or to give security, and appealed from the decree to this court; and to render his appeal effectual, he applied to the court here and obtained an order to show cause (as has been done in this case), why proceedings in the divorce court should not be stayed pending the appeal, and to fix the amount of an appeal bond to operate as a stay. But this court refused to interfere with the proceedings of the court below, or to fix the amount of a stay bond.

I think the application for a stay of proceedings should be denied, and the appeals dismissed.

On a petition for a rehearing the following opinion was filed on the 29th of July, 1885.

Ross, J.— In the opinion recently delivered in this case we held, *first,* that an action for divorce is a case in equity, and that an appeal lies to the Supreme Court from the judgment of the Superior Court granting a divorce; and *second,* that an order made *pendente lite* by the Superior Court directing the payment of alimony is also appealable. In the petitions for rehearing on file it is said by counsel for the plaintiff that in holding that the order for the payment of alimony is appealable, we have decided exactly contrary to several former decisions of this court. *Church* v. *Church,* No. 9405; *MacNevin* v. *MacNevin,* 63 Cal. 186; *Ex parte Cottrell,* 59 Cal. 417, and *Ex parte Perkins,* 18 Cal. 60, are the cases in which it is said by counsel that an opposite conclusion was announced. In *Church* v. *Church,* no order *pendente lite* for the payment of alimony was made by the Superior Court. The question as to whether such an order was or was not appealable could not therefore by any possibillity have arisen in the case. The trial court there granted the plaintiff a divorce, and in its decree granting the divorce awarded the plaintiff permanent alimony and a certain stated sum for fees of counsel. From that decree the defendant gave notice of appeal to this court, and within statutory time executed an undertaking, pursuant to section 941 of the Code of Civil Procedure, in the sum of $300. There can be no sort of doubt that the notice and undertaking thus given perfected the appeal to this court from the final judgment of the Superior Court. The only question in *Church* v. *Church* was as to a stay of proceedings upon the judgment. The only undertaking given by the appellant was the one in the sum of $300 for the payment of such costs and damages as might be awarded on the appeal, but the appellant subsequently applied to the Superior Court to fix the amount of an undertaking to be given by him for the purpose of staying all proceedings on the judgment, and the application being denied by the Superior Court, a similar application was made here and denied, no opinion being delivered. This was the case of *Church* v. *Church,* and all of it, which is cited and deliberately stated by counsel for the plaintiff in the present case to have decided that there was no appeal from an intermediate order in an action of divorce directing the payment of alimony. No argument can make plainer the fact that

no such question was or could have been involved in *Church* v. *Church*. And so with respect to the other cases cited by counsel for plaintiff. A bare statement of the facts will clearly show that in none of them has this court ever decided contrary to what we have held in the present case. In *MacNevin* v. *Mac-Nevin*, 63 Cal. 186, which was an action for divorce, the District Court had, pending the action, made orders from time to time directing the defendant to pay certain sums as alimony, which orders, though enforcible by executions, were in fact never enforced. The court after trial ordered "that plaintiff's prayer for divorce be denied, and that defendant have judgment for costs." After the making of this order, on motion of defendant's counsel, all the orders formerly made granting to the plaintiff alimony were vacated, and from this last order the plaintiff appealed as from an order made after final judgment. But the court held that the record only showed an *order* for judgment, and, therefore, that the order setting aside the orders granting alimony was not an order made after final judgment, and consequently not appealable.

In *Ex parte Cottrell*, 59 Cal. 419, this court distinctly said : "Whether any undertaking could be given which would operate as a stay of the execution of the order (for the payment of alimony) pending the appeal, *or whether any appeal lies from such an order, are questions which do not necessarily arise in this case, and we therefore express no opinion upon them.*" Yet counsel for the plaintiff here say that in *Ex parte Cottrell*, we decided that no appeal lay from an order directing the payment of alimony. *Ex parte Perkins*, 18 Cal. 60, is the only other case in which it is said by plaintiff's counsel that this court has held that there was no appeal from an order granting alimony. In that case Perkins was, by an order of the court, directed to pay a sum of money for expenses incurred by his wife in the action for divorce, and having refused to do so, was imprisoned, and sought to be discharged from imprisonment on habeas corpus upon the ground that the sum adjudged against him was a debt within the meaning of that provision of the Constitution which secured the citizen against imprisonment for debt, except for fraud. The court held, and properly held, that the amount ordered to be paid by the husband was not a debt within the meaning of the Con-

stitution; that the husband did not owe the wife any specific sum of money, but he owed a duty to her which might be enforced by order of the court, compelling him to pay her money. The question there, the case being habeas corpus, involved only *the power* of the court to make the order. No question of appeal was involved, nor could the regularity of the proceedings be in any way considered. There is no inconsistency between that case and our ruling in the present one. We have never said that an order for the payment of alimony was a final judgment in the sense that a judgment for the payment of money from one man to another is, but we said, as did the Supreme Courts of Illinois and Kentucky in the cases cited, that it was *in the nature* of a final judgment, possessing the essential elements of such judgment, and which could be enforced not only by execution against property, but by imprisonment of the body of the delinquent. We repeat the fact that the question under consideration has never before been passed upon in this State, and that it is with us as the case of *Blake* v. *Blake* was with the Supreme Court of Illinois, one of first impression. The court there says: "The question raised is one that has never been passed upon by this court, but upon first impression we are of opinion the appeal will lie. It is a money decree, is for a specific sum, and is payable absolutely. No execution has been as yet awarded, but the court has the undoubted authority to award an execution, or if payment was wilfully and contumaciously refused, the decree might be enforced by attachment as for contempt, or payment might be coerced by sequestration of real or personal estate. By one mode or the other the decree could be enforced, and if the defendant has property, it could in some way, consistently with the practice in Courts of Chancery, be subjected to its payment. Such a decree does not seem to us to be merely interlocutory. It is more in the nature of a final decree, and if no appeal lies this case affords an instance of a money decree against a party from which no relief can be had, no matter how unjust or oppressive. This ought not to be. It is no answer to this position to say defendant can have this decree against him reviewed on appeal or error after final decree in the original cause. Of what avail would that privilege be to him then? The litigation might be protracted, and years elapse before any

final decision could be reached. In the meantime he has been imprisoned for disobedience to the decree, or his property under process of law been subjected to the payment of the sum decreed. Nor does the fact an appeal is allowed impose any hardship not incident to other money decrees from which appeals may be prosecuted. On the theory alimony is for the immediate benefit of the wife to enable her to prosecute or defend her suit against her husband on terms of equality, the only serious result would be to delay the litigation until the propriety of the decree for temporary alimony and solicitors' fees could be determined in the appellate court. On the contrary, if an appeal should be denied, it might subject defendant to very great hardships in many cases, as the sequel will show." (80 Ill. 523.) The allowance of alimony is largely discretionary with the trial court, and will therefore be interfered with by the appellate court only in cases of abuse of discretion. Ordinarily in actions for divorce the marriage relation is not controverted, and should frivolous appeals be taken it will be an easy matter to impose such penalty as will put a stop to the practice. But in cases where the fact of marriage is the real issue no alimony should of right be paid until the fact of marriage or no marriage is properly determined, for the obvious reason that there can be no such thing as alimony unless the relation of husband and wife in fact exist.

There is, however, some question as to the character of bond necessary to stay proceedings upon the order for the payment of alimony.

With respect to that question, and to that only, there is some inconsistency in the opinions of the court, and upon that question, and that only, we desire to hear further argument, and for that purpose and to that extent only grant a rehearing.

MORRISON, C. J., THORNTON, J., MCKINSTRY, J., and SHARPSTEIN, J., concurred.

MYRICK, J., concurring.—I agree with the views presented by Ross, J., down to the reasons given for a rehearing. I am satisfied with the judgment heretofore given. I wish to add the following to what has been said in favor of the appellate jurisdiction of this court:—

Independent of what has been already said, I am of opinion that under the present Constitution there can be no question as to the appellate jurisdiction of this court in the case of an alimony order. I base this view on the terms of the Constitution, viz.: Article vi., section 5: "The Superior Court shall have original jurisdiction *in all cases in equity."* Article vi., section 4: "The Supreme Court shall have appellate jurisdiction *in all cases in equity."* Wherever and whenever a Superior Court has jurisdiction to take any step or proceeding, or make any order in any case in equity of that step, proceeding or order, the Supreme Court has appellate jurisdiction. The legislature may provide machinery, it may declare when the appeal may be taken (as in regard to orders which involve the merits or necessarily affect the judgment it has done), but neither by direct action nor by omission can the appellate jurisdiction of this court be abridged; it is given by the Constitution in such plain and unequivocal words that it cannot be shorn off.

If, then, an action to have the validity of an alleged marriage determined and declared, or for divorce, be a case in equity, it conclusively follows that any order, step or proceeding which the Superior Court has jurisdiction to make in such action is subject to review by this court.

By way of contrast and to show more clearly, if need be, the meaning of the above-quoted clauses of the Constitution, I quote as to probate matters: Article vi., section 5: "The Superior Court shall have original jurisdiction . . . . of all matters of probate"; article vi., section 4, "The Supreme Court shall have appellate jurisdiction . . . . in all such probate matters as may be provided by law."

In probate, appellate jurisdiction is given in such matters only as the legislature may provide, while in equity cases the appellate jurisdiction is as broad and extensive as is the original jurisdiction.

It has been repeatedly held that where appellant jurisdiction is given, and no machinery is prescribed, the appellate court will furnish machinery, to the end that the right of review be not lost. (*Houghton's Appeal,* 42 Cal. 35; *People* v. *Jordan,* 66 Cal. 10.

As to whether the action now under consideration is a case in

equity has been considered in the opinion heretofore filed, and I do not deem any addition in that regard necessary or useful.

A rehearing having been had, the following opinion was filed on the 30th of November, 1885:—

THORNTON, J.—In this case, on a rehearing granted on the 29th of July last, a question as to the character of the undertaking required to stay proceedings in the court below on the appeal from the order in relation to alimony and counsel fees was left open to be argued. That question has been submitted for decision.

We are of opinion that the undertaking filed in this case is sufficient. It is in form proper, and in amount appears to be ample in point of security to the respondent in case of affirmance of the order. It does not appear that any exception was taken to the undertaking in the court below for insufficiency in form, or in any other respect.

The order herein, as said in the former opinion, is in the nature of a final judgment, and under such circumstances the statute as to the undertaking to stay proceedings on a final judgment applies. The statute (Code Civ. Proc. § 942) requires that the undertaking for a stay of proceedings in such case should be in double the amount named in the judgment or order. In this case, in the order in relation to alimony and counsel fees, two lump sums are mentioned, and also a sum which is required to be paid monthly. The amount in the undertaking is double the amount of the lump sums, and double the amount of the monthly payments for the period of three years, assumed to be the period during which the appeal will probably be pending. The whole amount covered by the undertaking is $305,000. We think that the undertaking for such amounts is in accordance with correct construction of the statute when applied to such an order.

We find nothing in *Ex parte Perkins,* 18 Cal. 60, or *Ex parte Cottrell,* 59 Cal. 417, or *MacNevin* v. *MacNevin,* 63 Cal. 186, in conflict with our former decision in this case. In *Church* v. *Church,* No. 9405, heard before Department One, there was no opinion delivered, and on what grounds the motion in that case was denied does not appear on the records of this court. Con-

ceding that some inconsistency appears to exist from the fact that the motion in that case was denied, we think the ruling in this case is the better one, and we adhere to it. (See the statement as to *Church* v. *Church*, in the opinion of this court filed on the 29th of July, 1885, *ante* page.

The order originally made in this case will stand as made.

MORRISON, C. J., ROSS, J., SHARPSTEIN, J., and MYRICK, J., concurred.

McKEE, J., dissented.

MR. JUSTICE McKINISTRY, being ill, took no part in this decision.